IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE SEGERDAHL CORP. d/b/a SG360°,<br><br>        Plaintiff,<br><br>v.<br><br>ANTHONY FERRUZZA; MICHAEL FERRUZZA; DANIELLA TUCCI; CHRISTOPHER KNOLL; ERICA KNOLL; EUGENE "CORKY" CZECH; VINCE DANTE; and AMERICAN LITHO, INC.,<br><br>        Defendants. | No. 1:17-cv-03015<br><br>Judge Sharon Johnson Coleman<br>Magistrate Judge Sheila Finnegan |

## AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

For its Amended Complaint for Injunctive Relief and Damages against Defendants Anthony Ferruzza, Michael Ferruzza, Daniella Tucci, Christopher Knoll, Erica Knoll, Eugene "Corky" Czech, Vince Dante (collectively, the "Individual Defendants") and American Litho, Inc. ("American Litho") (collectively with the Individual Defendants, "Defendants"), Plaintiff, The Segerdahl Corp. d/b/a SG360° ("Segerdahl"), states as follows:

### NATURE OF THE ACTION

1.        Defendants Anthony Ferruzza, Michael Ferruzza, Daniella Tucci, Christopher Knoll, Erica Knoll and Eugene "Corky" Czech are former employees of Segerdahl who recently left en masse—resigning between January 31, 2017 and February 2, 2017—to become employed by American Litho, one of Segerdahl's competitors in the commercial printing and direct mail/direct marketing industries.  Forensic analysis shows that in the days and weeks immediately prior to their departure from Segerdahl, Anthony Ferruzza, Michael Ferruzza,

Daniella Tucci, Christopher Knoll, Erica Knoll and Eugene "Corky" Czech used their Segerdahl-issued computers to (a) connect USB storage devices and copy Segerdahl documents and files thereto; (b) email numerous Segerdahl documents and files to personal email addresses; (c) access and use third-party cloud storage services Google Drive, Dropbox and Box.com; (d) print numerous Segerdahl documents and files, in an abnormal spike of printing activity; and (e) delete numerous Segerdahl documents and files. The Segerdahl documents and files that they took and deleted include confidential information and trade secrets pertaining to Segerdahl's business, including financial statements, current and historical sales data (by customer), customer information, billing reconciliation, facility- and customer-specific operating procedures, job workflows, operational initiatives, customer quotes, vendor information, work schedules and employee compensation information.

2.      Approximately six months before Anthony Ferruzza, Michael Ferruzza, Daniella Tucci, Christopher Knoll, Erica Knoll and Eugene "Corky" Czech left Segerdahl, Anthony Ferruzza, while employed as Senior Vice President and General Manager of Segerdahl's Gilman sheetfed and digital operation, solicited sales, production and support staff to join American Litho. In those conversations, Anthony Ferruzza urged a number of key employees to move to American Litho. Approximately six months after soliciting Segerdahl's employees, Anthony Ferruzza left Segerdahl to join American Litho, taking with him Michael Ferruzza, Daniella Tucci, Christopher Knoll, Erica Knoll and Eugene "Corky" Czech and a trove of Segerdahl's confidential information and trade secrets. Segerdahl phone records show that certain of the Individual Defendants made multiple phone calls to the cell phone of Michael Fontana, President of American Litho, dating back to June 2016. The timing of this was no accident. Anthony Ferruzza deferred and concealed his plans to leave and his solicitation of the

other Individual Defendants to join him and American Litho, as did the other Individual Defendants, in order that Anthony Ferruzza might cash in on nearly $2 million in stock appreciation rights awards ("SARs") that he reaped on December 7, 2016 as the result of the acquisition of Segerdahl by ICV Partners. As a member of senior management, Anthony Ferruzza signed a Confidentiality Agreement and received confidential information related to the sale process and its timing. Resigning post-sale also benefited the other Individual Defendants as they participated in the company's Employee Stock Ownership Plan ("ESOP"). Per the terms of the ESOP, upon sale of the Company, ESOP shares were immediately vested and converted to cash within 60 to 90 days. Under regular ESOP vesting provisions, individuals leaving the Company before age 59½ would be subject to a five-year payout schedule. Each Individual Defendant is less than 59½ years of age.

3. Anthony Ferruzza and the other Individual Defendants, therefore, continued in their Segerdahl employment and continued receiving the substantial compensation that employment entailed while they were planning their departures to American Litho and timing those departures to maximize the benefit to themselves and to American Litho, and to maximize the harm to Segerdahl. These benefits to the Individual Defendants included nearly $2 million in SARs awards to Anthony Ferruzza. In addition, the Individual Defendants each received accelerated vesting of all ESOP shares held in the company as a result of the sale of the company on December 7, 2016. These ESOP shares were valued at $221,264 for Anthony Ferruzza, $4,044 for Michael Ferruzza, $28,596 for Daniella Tucci, $278,424 for Christopher Knoll, $1,076 for Erica Knoll; $1.4 million for Eugene "Corky" Czech and $811,726.67 for Vince Dante.

4.     During this time, Defendant Vince Dante, Segerdahl's former Director, Infrastructure and Networking, most probably at Anthony Ferruzza's direction and in conspiracy with the other Defendants, was using his position (and his access to Segerdahl employee passwords) to illegally and surreptitiously (1) use a personal computing device/iPad to access the Segerdahl email accounts of Segerdahl's CEO, Mary Lee Schneider, and its Chairman of the Board and former CEO, Rick Joutras; (2) copy confidential information from those Segerdahl email accounts pertaining to Segerdahl's business and the sale thereof; and (3) paste the purloined information into emails directed from Vince Dante's personal email account, Vdante1@me.com, to Anthony Ferruzza's personal email account, Aferruzza@att.net.   Vince Dante allegedly deleted from his personal email account each of the emails that he sent to Anthony Ferruzza's email account.     Likewise, Anthony Ferruzza deactivated his aferruzza@att.net email account, thus destroying evidence of this unlawful activity.   Anthony Ferruzza never notified anyone at Segerdahl about the fact that Vince Dante was illegally and surreptitiously sending hacked emails to Anthony Ferruzza containing confidential information mined from the Segerdahl email accounts of Segerdahl's CEO and former CEO.

5.     Vince Dante interviewed for a position with American Litho in or around November 2016.  Although Vince Dante claims that he turned down the position for monetary reasons, he actually resigned from Segerdahl in January 2017 before subsequently revoking his resignation days later.  Segerdahl terminated Vince Dante on June 26, 2017 when Segerdahl discovered the full extent of his wrongful and illegal activity in conspiracy with the other Individual Defendants.

6.     The Individual Defendants have violated the Defend Trade Secrets Act, the Computer Fraud and Abuse Act and the Illinois Trade Secrets Act; breached their fiduciary

duties; tortiously interfered with Segerdahl's prospective economic advantage; aided and abetted each other's breaches of fiduciary duties; converted Segerdahl's documents, files and other materials; and unfairly competed and unjustly enriched themselves. They did this to benefit American Litho well before resigning their Segerdahl employment and, therefore, while they each owed Segerdahl fiduciary duties, including duties to act at all times with the utmost good faith, loyalty, honesty and fair dealing towards Segerdahl. In addition, American Litho has tortiously interfered with Segerdahl's prospective economic advantage; aided and abetted the Individual Defendants' breaches of fiduciary duties; and unfairly competed and unjustly enriched itself.

7.      Segerdahl asserts the following claims against Defendants: (a) violation of the Defend Trade Secrets Act; (b) violation of the Computer Fraud and Abuse Act; (c) violation of the Illinois Trade Secrets Act; (d) breach of fiduciary duty; (e) tortious interference with prospective economic advantage; (f) aiding and abetting breach of fiduciary duty; (g) conversion; (h) unfair competition; (i) civil conspiracy; and (j) unjust enrichment.

8.      Prior to filing this action, Segerdahl attempted to secure the Individual Defendants' compliance with their continuing obligations, including by sending them several demand letters.

9.      Segerdahl thus seeks temporary, preliminary and permanent injunctive relief to stop Defendants from engaging in additional wrongful conduct. Segerdahl also seeks damages for the losses it has sustained as a result of Defendants' wrongful conduct to date; imposition of a constructive trust and the disgorgement of salaries and benefits (including any SARs awards to Anthony Ferruzza) received by Defendants; and punitive damages, attorneys' fees and costs as warranted by Defendants' egregious conduct.

**PARTIES**

10.     Segerdahl is an Illinois corporation with its principal place of business in Wheeling, Illinois.  Segerdahl is a citizen of Illinois.

11.     Anthony Ferruzza is an individual residing in Carol Stream, Illinois.  Anthony Ferruzza is a citizen of Illinois.

12.     Michael Ferruzza is an individual residing in Lombard, Illinois.  Michael Ferruzza is a citizen of Illinois.

13.     Daniella Tucci is an individual residing in Northbrook, Illinois.  Daniella Tucci is a citizen of Illinois.

14.     Christopher Knoll is an individual residing in Bloomingdale, Illinois.  Christopher Knoll is a citizen of Illinois.

15.     Erica Knoll is an individual residing in Tinley Park, Illinois.  Erica Knoll is a citizen of Illinois.

16.     Eugene "Corky" Czech is an individual residing in Tinley Park, Illinois.  Eugene "Corky" Czech is a citizen of Illinois.

17.     Vince Dante is an individual residing in Mount Prospect, Illinois.  Vince Dante is a citizen of Illinois.

18.     American Litho is a Illinois corporation with its principal place of business in Carol Stream, Illinois.  American Litho is a citizen of Illinois.

**JURISDICTION AND VENUE**

19.     Subject matter jurisdiction is proper under 28 U.S.C. §§ 1331 and 1367 because this Court has original jurisdiction over Segerdahl's causes of action under the Defend Trade Secrets Act, 18 U.S.C. § 1836(b), and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030,

and supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over Segerdahl's other causes of action arising under state law.

20.     Personal jurisdiction is proper under 735 ILCS 5/2-209(a)(1), 2-209(a)(2), 2-209(a)(11), 2-209(b)(2), 2-209(b)(3) and 2-209(c) because (a) Segerdahl's causes of action arise from the transaction of business in Illinois, the commission of tortious acts in Illinois and the breach of fiduciary duties in Illinois; (b) Anthony Ferruzza, Michael Ferruzza, Daniella Tucci, Christopher Knoll, Erica Knoll and Eugene "Corky" Czech are domiciled and reside in Illinois; (c) American Litho is an Illinois corporation; and (d) the Court's exercise of jurisdiction over Defendants would not violate due process.

21.     Venue is proper in this judicial district under 28 U.S.C. § 1391 because (a) Defendants reside in this judicial district and (b) a substantial part of the events or omissions giving rise to Segerdahl's causes of action against Defendants occurred in this judicial district.

## BACKGROUND FACTS

### —Segerdahl's Business—

22.     Founded in 1956, Segerdahl is an industry-leading commercial printing and multichannel direct marketing solutions provider.  Segerdahl offers multichannel marketing solutions and services that range from research and strategy to concept and execution, including data programming, commercial printing, direct-mail production, data analytics, lettership, and distribution and fulfillment, among other services.  Headquartered in Wheeling, Illinois, with manufacturing operations in Wheeling and Broadview, Illinois, Segerdahl has sales locations elsewhere in Illinois and also in California, Michigan, Minnesota, New Jersey, New York and Texas.

—**Segerdahl's Customer Relationships**—

23.     Segerdahl's continued business success depends on its customer relationships. Segerdahl has expended considerable time, effort and money in initiating, developing and maintaining its customer relationships in order to preserve its competitive advantage.  In 2016, Segerdahl provided printing and marketing solutions to approximately 400 customers, and the majority of the top 20 of those customers have been with Segerdahl for 10 years or more.  For a printing and marketing services business such as Segerdahl's to succeed, it is necessary to have established customer relationships and production agreements in place.  Segerdahl continually invests in its equipment, systems and processes in order to meet its customers' needs.  Indeed, it spends between $10 million and $17 million a year in capital investments to maintain its customer relationships.

24.     Through all these efforts, Segerdahl has developed a strongly positive reputation for value, efficiency and quality in the marketplace and has engendered substantial goodwill with its customers.  These continuing efforts and this goodwill are critical to Segerdahl's success, and they result in Segerdahl gaining repeat business from its established customer relationships.

—**Segerdahl's Confidential Information**—

25.     In order to conduct its printing and marketing services business and to meet its customers' needs, Segerdahl has developed and relies upon certain confidential information ("Confidential Information"), including, but not limited to, the following:

> (a)     information relating to Segerdahl's business methods and practices, such as market research data; competitor information and data; consumer studies; product initiatives and strategies; sales projections; gross margin and revenue information; profit and loss information; marketing and business plans; business strategies; branding strategies; mergers and acquisitions information; and operating information and other non-published pricing, financial and sales data;

(b)    information relating to Segerdahl's customers, such as customer names, addresses, telephone numbers, emails and key contacts; customer contracts; customer orders; financial information pertaining to customer accounts, including billing statements and historic revenues; and customer production materials, including proofs, working files, works in progress, final or waste product, and any other part of a production job in whole or in part;

(c)    information pertaining to Segerdahl's suppliers, vendors and subcontractors, such as names, addresses, telephone numbers, emails and key contacts; proposals, presentations, bids and quotes; contracts; performance histories and capabilities; and financial information pertaining to the supplier, vendor or subcontractor, including billing statements and payments; and

(d)    information pertaining to Segerdahl's employees, such as contact information; personnel files; employment agreements; performance evaluations; tax forms; financial information pertaining to salaries, bonuses and benefits and special training qualifications.

### —Segerdahl's Trade Secrets—

26.    Segerdahl also has developed certain trade secrets ("Trade Secrets"), upon which Segerdahl relies to conduct its printing and marketing services business and to meet its customers' needs, including, but not limited to, the following:

(a)    compilations of information relating to Segerdahl's business methods and practices, such as compilations of industry data; compilations of standard operating procedures and process maps, and proprietary quality management system documentation; and compilations of the various legal requirements in areas where Segerdahl performs printing and marketing work;

(b)    compilations of information pertaining to Segerdahl's customers, such as compilations of customer contracts and the terms and conditions thereof; compilations of current and historic pricing terms, formulas and strategies; compilation lists of former, existing and prospective customers; compilations of customer purchase habits, orders, preferences and requirements; compilations of current and past proposals, presentations, bids and quotes; and compilations of key contact persons of former, existing and prospective customers; compilations of customer production materials, including proofs, working files, works in progress, final or waste product, and any other part of a production job in whole or in part;

(c)    compilations of information relating to current or prospective suppliers, vendors and subcontractors, such as compilations of contracts and the terms and conditions thereof; compilations of current and past proposals, presentations, bids, quotes and cost calculators; compilation lists of former, existing and prospective suppliers, vendors and subcontractors; compilations of billing statements and payments; compilations of work performed; and compilations of key contact persons; and

(d)    compilations of employee information, such as a compilation roster of former and current employees, including personal and work contact information; compilations of employment agreements and the terms and conditions thereof; and compilations of salaries, bonuses, benefits and other offers/terms of employment.

**—Segerdahl's Efforts to Protect Its Confidential Information and Trade Secrets—**

27.    Segerdahl's Confidential Information and Trade Secrets are sufficiently secret to derive economic value because they are not generally known to the industry or publicly available, and they are a by-product of countless hours and expense on the part of Segerdahl spanning more than sixty-one (61) years.  As a result, Segerdahl's Confidential Information and Trade Secrets afford Segerdahl an advantage over its competitors.

28.    Segerdahl has taken reasonable measures to maintain the secrecy and confidentiality of its Confidential Information and Trade Secrets.  These measures include the following:

(a)    implementing policies and training employees annually on the importance and requirements of maintaining the confidentiality of Segerdahl's Confidential Information and Trade Secrets.  Annual Security Training requires every employee to sign a document stating that he or she agrees to abide by the security guidelines regarding the confidentiality of company and customer information;

(b)    disclosing Segerdahl's Confidential Information and Trade Secrets only to those persons who need to know them in order to perform their work for Segerdahl and mandating that such information be used only for Segerdahl's benefit;

(c)    controlling access to Segerdahl's facilities, which remain locked and secured during nonbusiness hours, as well as locking secure areas,

10

restricting access to designated employees through the use of keys issued by Segerdahl, and maintaining 24-hour video surveillance of the facilities;

(d)     maintaining Segerdahl's Confidential Information and Trade Secrets on password-protected computer systems with login procedures that restrict access to Segerdahl personnel on a strictly need-to-know basis;

(e)     conducting exit interviews (when possible) and reminding departing employees of their obligations to return all of Segerdahl's Confidential Information and Trade Secrets and to abide by their nondisclosure covenants;

(f)     investigating and taking prompt action whenever Segerdahl learns that someone is wrongly using Segerdahl's Confidential Information and/or Trade Secrets, in order to attempt to stop such use;

(g)     participating in client-mandated annual audits of enforcement of data security policies; and

(h)     investigating and taking prompt action in accordance with applicable data privacy laws, regulations and best practices whenever Segerdahl learns that a data breach or incident potentially has (or may have) occurred, including by providing the requisite notice to the appropriate parties and government entities.

29.     Segerdahl's Confidential Information and Trade Secrets could not be discovered, developed or compiled by a competitor without the investment of substantial sums of money over a period of years.  If Segerdahl's Confidential Information or Trade Secrets were to be disclosed to and/or used by a competitor, that competitor would be able to compete unfairly against Segerdahl in the printing and marketing industry.  Among other things, such disclosure and/or use would enable a competitor to more effectively provide competing products and services, and to solicit Segerdahl's customers and employees, without having to spend the time, effort, expense and resources that Segerdahl has expended over the years.  Under these circumstances, the economic value of Segerdahl's Confidential Information and Trade Secrets would be severely and irreparably damaged, if not completely lost, as would Segerdahl's advantage over its competitors in the industry.

11

**—The Individual Defendants' Employment with Segerdahl—**

30.     In April 2007, Segerdahl hired Anthony Ferruzza as its Prepress Manager.  He was eventually promoted to Senior Vice President and General Manager of Segerdahl's Gilman, Illinois facility.  In that role, Anthony Ferruzza had responsibility for the sheetfed and digital operations of Segerdahl.  Additionally, Anthony Ferruzza had full access to Segerdahl's financial information, customer data, content, production schedules and billing information, standard operating procedures, vendor contracts and employee personnel records.  As a member of the Segerdahl Executive Team, he also had access to information related to future business activities, including a transaction to sell the company.

31.     In September 2008, Segerdahl hired Michael Ferruzza as a Prepress Operator.  It eventually promoted him to Director of Prepress at the Gilman, Illinois facility. In that role, Michael Ferruzza supervised the receipt, preparation, optimization and archiving of customer-supplied digital content for print.

32.     In October 2010, Segerdahl hired Daniella Tucci as a Receptionist.  It eventually promoted her to Digital Project Manager at its Gilman, Illinois facility.  In that role, Daniella Tucci interfaced with Segerdahl's customers to plan and project manage print programs.

33.     In September 1996, Segerdahl hired Christopher Knoll in an operational role.  He was eventually promoted to Segerdahl's Director of Project Management at its Gilman, Illinois facility.  In that role, Christopher Knoll worked directly with Segerdahl's customers to plan all aspects of printing jobs.  He had responsibility for all the Project Managers for both print and mailing operations.

34.     In August 2012, Segerdahl hired Erica Knoll as a Receptionist.  It eventually promoted her to Sheet Fed and Digital Project Manager.  In that role, Erica Knoll interfaced with customers to plan and project manage print programs.

35.     In September 1981, Segerdahl hired Eugene "Corky" Czech as a Supervisor.  It eventually promoted him to the Director of Manufacturing role, where he had responsibility for the manufacturing operations of Sergerdahl's Gilman facility.

36.     In April 2000, Segerdahl hired Vince Dante as a color/scanning operator.  It eventually promoted him to Director, infrastructure and networking.  In that role, Vince Dante oversaw the IT Help Desk, security and the Segerdahl network.

37.     In 2016, the Individual Defendants each acknowledged their respective receipt of and understanding and willingness to abide by the policies set forth in the Segerdahl Confidentiality and Nondisclosure policy ("Nondisclosure Policy") and the Segerdahl Employment Handbook ("Handbook"), which set forth confidentiality, nondisclosure and other policies to which all employees must adhere.  (Copies of the Nondisclosure Policy and the Handbook are attached as **Exhibits A** and **B**, respectively.)  For example, the Segerdahl Nondisclosure Policy provides, in relevant part:

> Confidentiality and Nondisclosure
>
> In the course of your association with Segerdahl, you may become privy to confidential information concerning Segerdahl. Such confidential information includes information about our business or customers that is not considered public. The following are some, but not the only examples of confidential information:
>
> 1.      Company or customer financial information.
> 2.      Company or customer marketing strategies.
> 3.      Company or customer computer processes.
> 4.      Company compensation data.
> 5.      Company or customer computer programs or codes.
> 6.      Company or customer proprietary production processes.

      7.     Customer lists.
      8.     Research on new materials.
      9.     Pending projects and proposals.
     10.    Technological data.

Segerdahl requires that you keep all such information confidential both during and after your employment with Segerdahl. Unauthorized use or disclosure of any such information to any person or entity, or allowing any person to examine or make copies of reports or documents containing confidential information, is strictly prohibited and will result in discipline, up to and including termination. If you have any questions about these matters, ask your manager for guidance.

(Ex. A.)

38.     Likewise, in accordance with the express provisions of the Handbook, and as a further condition of their employment with Segerdahl, the Individual Defendants agreed that they were not engaged in any "[u]se or disclosure of proprietary or confidentiality information regarding Segerdahl or a fellow employee."  (Ex. B at 24–25.)

39.     The Individual Defendants each signed a Segerdahl Company Property Acknowledgment, pursuant to which they each acknowledged and agreed that "all production materials including all proofs, working files, work in progress, final or waste product or any other part of a production job in whole or in part, cannot be used for personal purposes or taken out of the company premises."  (A copy of the Company Property Acknowledgments signed by Anthony Ferruzza, Michael Ferruzza, Daniella Tucci, Christopher Knoll, Erica Knoll, Eugene "Corky" Czech and Vince Dante are attached as **Group Exhibit C**.)

**—The Individual Defendants' Access to
Segerdahl's Confidential Information and Trade Secrets—**

40.     During their tenure at Segerdahl, the Individual Defendants each had access to and became familiar with Segerdahl's Confidential Information and Trade Secrets.   This

information was stored in paper form as well as electronically on Segerdahl's network drives and on the Individual Defendants' Segerdahl-issued computing devices.

41.     In addition, Anthony Ferruzza participated in numerous periodic strategy meetings during which he was exposed to, and provided input and support with respect to, Segerdahl's Confidential Information and Trade Secrets.  As a member of Segerdahl's Executive Team, Anthony Ferruzza participated in frequent, confidential discussions with Segerdahl's upper management regarding Segerdahl's future business plans, including the potential sale of the company.

42.     During their tenure with Segerdahl, the Individual Defendants also developed close working relationships with Segerdahl's existing customers and helped spearhead new business development efforts.  Segerdahl paid the Individual Defendants as its agents to maintain and develop these relationships and work on these efforts exclusively on Segerdahl's behalf.

**—Anthony Ferruzza's Solicitation of Sales Production and Support Personnel on Behalf of American Litho—**

43.     Approximately six months before he left Segerdahl, Anthony Ferruzza solicited sales production and support personnel to join American Litho.  Anthony Ferruzza urged these individuals to consider a move to American Litho.

44.     On information and belief, Anthony Ferruzza also solicited offers of employment for himself and the other Individual Defendants from other local print service providers that are competitors of Segerdahl, including by promoting the Individual Defendants' collective value as a team and by claiming that Anthony Ferruzza and the Individual Defendants could help secure business from certain of Segerdahl's customers.

**—The Individual Defendants' Resignations/Termination from Segerdahl—**

45.     On January 31, 2017, Anthony Ferruzza quit his employment with Segerdahl without prior notice, and his last day of employment was the very same day.

46.     Segerdahl would have immediately fired Anthony Ferruzza in September 2016, or earlier, if Segerdahl had known that he was soliciting Segerdahl's employees to go to American Litho and that he planned to misappropriate Segerdahl's Confidential Information and Trade Secrets in complicity with the other Individual Defendants, as their leader, for their own benefit and that of American Litho.

47.     Instead, Anthony Ferruzza hid his competitive activity and waited to quit until after the nearly $2 million in SARs he received as the result of the acquisition of Segerdahl by ICV Partners vested on December 7, 2016, as well as accelerated vesting of his ESOP shares.

48.     On January 30, 2017, Michael Ferruzza resigned his employment with Segerdahl. His last day of employment was February 10, 2017.  Michael Ferruzza hid his competitive activity and waited to quit until after accelerated vesting of his ESOP shares.

49.     On January 31, 2017, Daniella Tucci resigned her employment with Segerdahl. Her last day of employment was February 10, 2017.  Daniella Tucci hid her competitive activity and waited to quit until after accelerated vesting of her ESOP shares.

50.     On February 2, 2017, Christopher Knoll resigned his employment with Segerdahl. His last day of employment was February 10, 2017.  Christopher Knoll hid his competitive activity and waited to quit until after accelerated vesting of his ESOP shares.

51.     On February 1, 2017, Erica Knoll resigned her employment with Segerdahl.  Her last day of employment was February 10, 2017.  Erica Knoll hid her competitive activity and waited to quit until after accelerated vesting of her ESOP shares.

52.     On January 30, 2017, Eugene "Corky" Czech resigned his employment with Segerdahl.  His last day of employment was February 10, 2017.  Eugene "Corky" Czech hid his competitive activity and waited to quit until after accelerated vesting of his ESOP shares.

53.     Vince Dante interviewed for a position with American Litho in or around November 2016.  Although Vince Dante claims that he turned down the position for monetary reasons, he actually resigned from Segerdahl in January 2017 before subsequently revoking his resignation days later.   Segerdahl terminated Vince Dante in June 2017 when Segerdahl discovered the full extent of his wrongful and illegal activity in conspiracy with the other Individual Defendants.  His last day of employment was June 26, 2017.

### —The Individual Defendants' Employment with American Litho—

54.     With the exception of Vince Dante, the Individual Defendants each began formal employment with American Litho upon leaving Segerdahl in February 2017.

55.     American Litho hired (a) Anthony Ferruzza as Senior Vice President Digital and Sheetfed Division, (b) Michael Ferruzza as Prepress Manager, (c) Daniella Tucci as Project Manager, (d) Christopher Knoll as Director, Sheetfed and Digital Operations, (e) Erica Knoll as Project Manager and (f) Eugene "Corky" Czech as Sheetfed Press Room Manager.

56.     The Individual Defendants' (not including Vince Dante) respective positions and responsibilities at American Litho are the same as or substantially similar to the positions they held with Segerdahl.  The confidential and proprietary business information to which they had access at Segerdahl is directly relevant to, and has great commercial value in, their duties and responsibilities at American Litho.

57.     During the same time period that the Anthony Ferruzza, Michael Ferruzza, Daniella Tucci, Christopher Knoll and Erica Knoll resigned, American Litho, through its sales

17

executives and representatives, began aggressively contacting certain of Segerdahl's customers. In certain of these communications, American Litho stated that "there has been a lot of change at your current vendor in the past couple weeks, I wanted to let you know that we will be able to support your business and any of your projects with people that are very familiar with your work, if you need us to." In certain other communications, American Litho specifically named and highlighted each of the Individual Defendants (except for Vince Dante) without mentioning any of the other employees in that division of American Litho's business.

**—Defendants' Misconduct—**

58. The Individual Defendants and American Litho have committed numerous wrongful acts in violation of their respective obligations to Segerdahl, including those set forth below and in Counts I–X.

59. The ongoing forensic analysis of Anthony Ferruzza's Segerdahl-issued iMac computer has revealed that his printing activity spiked dramatically in January 2017, immediately prior to his departure from Segerdahl. In his last weeks with Segerdahl, Anthony Ferruzza used this computer to access and print numerous documents and files, none of which he restored to Segerdahl before his abrupt departure, including files related to the 2017 Segerdahl budget (including sales information by customer), full-year press schedules, operating procedures, operational initiatives and specific customer job estimates. During his last month at Segerdahl, Anthony Ferruzza printed 132 documents, which was an increase of 43% over his usual monthly average, a 65% increase over the previous month and a high-water mark overall for his entire print history.

60. On his last day of employment, January 31, 2017, Anthony Ferruzza deleted all user-created documents associated with his user profile. Anthony Ferruzza also accessed and

18

modified his Segerdahl-issued computer's "Trash" folder on January 31, 2017, emptying all files contained therein, which effectively deleted all file-system metadata for the corresponding files. The forensic analysis of this computer has thus far recovered four of the deleted files, including Gilman key metrics, phone directories and operational initiative details.

61.     In addition, on the evening of November 29, 2016, a member of Segerdahl's IT staff, John Cleary, ran an overnight back up of Anthony Ferruzza's Segerdahl-issued computer to an external "clone" drive in the ordinary course of his work in preserving Segerdahl's business information.  The next day, November 30, 2016, John Cleary requested that Anthony Ferruzza return the "clone" drive to him for safekeeping, per routine Segerdahl IT practices.  Anthony Ferruzza aggressively refused; angrily announced that he did not want anyone "looking at his sh*t;" and directed John Cleary that he, Anthony Ferruzza, would be keeping the back-up "clone" drive in his office desk drawer.  Anthony Ferruzza had never previously insisted on this exception to Segerdahl IT practice, and indeed no other Segerdahl employee had similarly insisted that he/she, not Segerdahl IT, maintain possession of the back-up "clone" drive of their Segerdahl-issued computer.  The day of, or day following Anthony Ferruzza's abrupt resignation from Segerdahl on January 31, 2017, John Cleary searched Anthony Ferruzza's office for the back-up "clone" drive, to no avail.  Despite an extensive search, Segerdahl has been unable to locate the back-up "clone" drive, and that "clone" drive  has been missing since Anthony Ferruzza's abrupt departure from Segerdahl.  Segerdahl believes the backup "clone" of Anthony Ferruzza's computer to include, at a minimum, a complete duplicate of the files on that computer as of November 29, 2016, including but not limited to confidential and proprietary Segerdahl business information and files previously entrusted to Anthony Ferruzza.

62.     Furthermore, while Anthony Ferruzza was organizing the mass defection of Segerdahl's employees, and from at least approximately October through December 2016, Vince Dante—i.e., Segerdahl's Director, Infrastructure and Networking—was using his position (and his access to Segerdahl employee passwords) to illegally and surreptitiously (a) use a personal iPad to access the Segerdahl email accounts of Segerdahl's CEO, Mary Lee Schneider, and its Chairman of the Board and former CEO, Rick Joutras; (b) copy confidential information from those Segerdahl email accounts pertaining to Segerdahl's business and the sale thereof; and (c) paste the purloined information into emails directed from Vince Dante's personal email account, Vdante1@me.com, to Anthony Ferruzza's personal email account, Aferruzza@att.net. Vince Dante allegedly deleted from his personal email account each of the emails that he sent to Anthony Ferruzza's personal email account.  Through counsel, Anthony Ferruzza claims to have deactivated his Aferruzza@att.net email account on February 17, 2017, and he further claims that, by doing so, he deleted all data associated with that email account.  Anthony Ferruzza never notified anyone at Segerdahl about the fact that Vince Dante was illegally and surreptitiously sending hacked emails to Anthony Ferruzza containing confidential information mined from the Segerdahl email accounts of Segerdahl's CEO and its Chairman of the Board.

63.     Additionally, on Sunday, February 5, 2017, while Vince Dante was helping to set up a Super Bowl party being hosted by Anthony Ferruzza, Anthony Ferruzza brought Vince Dante an Apple MacBook Pro purchased with Segerdahl funds.  According to his counsel, Anthony Ferruzza asked Vince Dante about getting rid of Segerdahl information on this device. Vince Dante, still a Segerdahl employee at the time, told Anthony Ferruzza that replacing the internal hard drive would be the best way to get rid of all information on the computer.  Vince Dante then removed the internal hard drive, handed it to Anthony Ferruzza and watched as

Anthony Ferruzza snapped the hard drive in two with his hands and threw the pieces in the trash. Segerdahl policies call for the *return* to Segerdahl, not the destruction, of its business information on an employee's separation (*see* Ex. B at 19, "Company Property").

64. On May 3, 2017, Anthony Ferruzza executed a declaration in support of Defendants' Response in Opposition to Plaintiff's Emergency Motion for a Temporary Restraining Order, in which he falsely stated, "I did not take any information from Segerdahl. I have not misused or disclosed any information from Segerdahl." (*See* Dkt. 38-1.)

65. The ongoing forensic analysis of Michael Ferruzza's Segerdahl-issued MacPro Tower computer has revealed that he used it to access and use, with no authority from Segerdahl, third-party cloud storage services Google Drive, Dropbox and Box.com in the days and weeks immediately preceding his departure from Segerdahl. In addition, prior to leaving Segerdahl, Michael Ferruzza deleted all user-created documents associated with his user profile, and he accessed and modified his computer's "Trash" folder on February 8, 2017, emptying all files contained therein, which effectively deleted all file-system metadata for the corresponding files. The forensic analysis of this computer has thus far not been able to recover any of the deleted files or file names.

66. In addition, during expedited discovery in this case, Michael Ferruzza has admitted that, on or around January 30, 2017—i.e., the day he resigned his employment with Segerdahl—he connected an external USB hard drive to his Segerdahl computer and copied approximately 1,350 documents from his computer to the USB drive. Subsequently, Michael Ferruzza transferred those Segerdahl documents to his American Litho computer and, on information and belief, to the American Litho network/servers. The documents that Michael Ferruzza misappropriated from Segerdahl are listed in a spreadsheet that he produced in

expedited discovery, which itemizes 1,350 documents. The overwhelming majority of these documents have titles showing that they are Segerdahl's business information and/or information of Segerdahl customers entrusted to Segerdahl, including (a) files containing proprietary instructions, best practices, standard operating procedures and production examples for the Gilman sheetfed facility; (b) 177 current, official standard operating procedures files, including for document control and retention, calibration, color ok, pressroom maintenance, shipping, digital, material handling and make-ready for the sheetfed press; (c) proprietary software scripts developed by Segerdahl to automate various prepress productions steps (to which Michael Ferruzza had access only because he was a privileged user of the prepress department which he managed); (d) prepress PDF customer production files; (e) final, complete and press-ready PDFs containing several thousand names and addresses; (f) customer security audit findings and remediation plans and FTP and SFTP access information and passwords for those customers (which would have given Michael Ferruzza and American Litho the ability to log in to customer FTP and SFTP sites and steal additional confidential information shared between Segerdahl and its customers); (g) files specific to Segerdahl's Gilman facility, including floor plans, prepress schedules, paper ordering, new job logs and pressroom inventory; and (h) Segerdahl-specific vendor contracts containing pricing, terms/conditions and customer-specific billing information.

67. Notably, the confidential Segerdahl business information listed in the Michael Ferruzza spreadsheet includes customer production materials, including proofs, working files, works in progress, final or waste product and other parts of production jobs (and compilations thereof). On May 3, 2017, Michael Ferruzza executed a declaration in support of Defendants' Response in Opposition to Plaintiff's Emergency Motion for a Temporary Restraining Order, in which he falsely stated, "When I left, I did not take with me any production materials. I did not

take any proofs, working files, work in progress, final or waste product or any other part of a production job in whole or in part." (*See* Dkt. 38-1, Michael Ferruzza Decl. ¶ 12.)

68.     Furthermore, the confidential Segerdahl business information listed in the Michael Ferruzza spreadsheet includes extensive protected health information ("PHI") relating potentially to tens of thousands of individual third parties, such PHI having been provided to Segerdahl by a Segerdahl customer, then misappropriated by Michael Ferruzza. With limited exceptions, Defendants continue to refuse to provide Segerdahl with most of the 1,350 Segerdahl files identified in the Michael Ferruzza spreadsheet. As a result of Michael Ferruzza's illegal actions, Segerdahl is engaging in ongoing, extensive work to aid its customer in responding to, and providing necessary notices and reports regarding, a significant data compromise incident in accordance with applicable data privacy rules, regulations and contractual obligations. Segerdahl has incurred and will continue to incur significant damages (reputational and financial) to redress Michael Ferruzza's illegal data theft, including the costs to remediate and the potential loss of business from Segerdahl's customers who have been affected by this significant data compromise incident.

69.     According to Vince Dante, Michael Ferruzza turned over a Segerdahl-issued MacBook Pro to Vince Dante on the weekend of February 25–26, 2017: just over two weeks after Michael Ferruzza left Segerdahl on February 10, 2017; at least five days after Segerdahl's February 20, 2017 letter to Michael Ferruzza demanding the return of Segerdahl's business information; and at least two days after American Litho's attorney wrote Segerdahl's counsel denying that any of the Individual Defendants had anything to return to Segerdahl. Vince Dante allegedly put this device into a drawer in his Segerdahl office, where it remained until May 11, 2017, when he claims to have recalled the existence of this MacBook Pro and Segerdahl turned it

over for forensic analysis. The ongoing forensic analysis of this device shows *at least five instances* when this device logged onto a Wi-Fi network called "ALITHOGUEST"—i.e., Defendant American Litho's guest Wi-Fi network—during the workweek of February 20–24, 2017. Each American Litho Wi-Fi log-on was an occasion for Michael Ferruzza (or any American Litho employee with whom he shared custody of the MacBook Pro) to use it to transmit Segerdahl business information to American Litho or use that information on American Litho's behalf.

70. The ongoing forensic analysis of Daniella Tucci's Segerdahl-issued desktop computer has revealed that, with no authority from Segerdahl, she connected at least two USB storage devices to this computer just prior to her departure from Segerdahl on February 1, 2017, which was the day after she resigned from Segerdahl and nine days before her separation date on February 10, 2017. Moreover, the data shows that neither of these USB storage devices had ever been attached to her computer previously. The first USB storage device (SanDisk Cruzer Blade USB Device Serial No. 4C530101651127114151) was connected to her computer on February 1, 2017, and Daniella Tucci interacted with the files related to production data and customer specific content just prior to inserting the USB device into the computer.

71. The second USB storage device was a Western Digital My Passport 0741 USB Device (Device Serial No. 575848314539334A434A3731), which is a large-capacity external storage device capable of storing 1 or 2 *terabytes* of information—i.e., the equivalent of 1,428–2,856 CD-ROMs, or between 75 million and 150 million printed pages. In Segerdahl's business, these types of large-capacity external storage devices are not typically used to store documents, but rather to back up Mac computers (her desktop computer is not a Mac computer) or to store and transfer high-resolution images such as those required to generate print-ready files

to generate plates or pages for the offset or digital printing process. Segerdahl stores these types of high-resolution images and print-ready files on password-protected, centralized desktop imaging servers, not on individual high-capacity portable USB devices such as the one Daniella Tucci connected to her desktop computer. With no authority from Segerdahl, Daniella Tucci connected this large-capacity storage device to the Segerdahl work computer assigned to her for business purposes only one day after tendering her resignation to Segerdahl on February 1, 2017. Shortly after connecting this Western Digital USB device to her desktop computer, Daniella Tucci accessed files relating to customer high-resolution images, print-ready files and billing information.

72.     In addition, Daniella Tucci has admitted to American Litho's outside general counsel that, while employed at Segerdahl, she regularly accessed Segerdahl documents and files and either emailed them to her personal email account in a zip file or copied them to a thumb drive, ostensibly so that Daniella Tucci could work from home using these documents. But Segerdahl never authorized Daniella Tucci to work from home at any time while she was employed by Segerdahl, nor did it authorize her to email Segerdahl business information to a non-Segerdahl, personally owned computer, and her claim, through American Litho's general counsel, that she "routinely performed additional work from home one or two days per week" is false.

73.     On May 3, 2017, Daniella Tucci executed a declaration in support of Defendants' Response in Opposition to Plaintiff's Emergency Motion for A Temporary Restraining order, in which she falsely stated, "I did not take any information from Segerdahl. I have not misused or disclosed any information from Segerdahl." (*See* Dkt. 38-1, Tucci Decl. ¶¶ 11–12.)

74.     The ongoing forensic analysis of Christopher Knoll's Segerdahl-issued desktop computer has revealed that, with no authority from Segerdahl, he connected at least one 16 GB USB storage device (Serial No. 200519426307BE4053B6) to his desktop computer just prior to his departure from Segerdahl on February 6, 7, 8, 9 and 10, 2017, which are all days after his resignation from Segerdahl and before his separation date.  Moreover, the data shows that the USB storage device had never been attached to his computer previously.  At those times, Christopher Knoll accessed and interacted with numerous files, including the file 2016.xlsm, which contains the contact information (including mobile and home phone numbers) for over 300 Segerdahl employees, and which was later deleted.  The other files that Christopher Knoll accessed and interacted with include nearly all of the Standard Operating Procedures for Segerdahl's Gilman, Illinois facility, contact lists, organizational charts, job workflows, rate cards and billing data, and employee offer letters.

75.     In addition, Christopher Knoll has admitted to American Litho's outside counsel that, immediately prior to his departure from Segerdahl, he downloaded his desktop computer's entire desktop drive onto a thumb drive.

76.     Christopher Knoll and American Litho returned the thumb drive to Segerdahl on or about March 23, 2017 (more than a month after Christopher Knoll's last date of Segerdahl employment).  Forensic examination revealed that Christopher Knoll took contact lists, organizational charts, job workflows, rate cards and billing data, standard operating procedures and employee offer letters.  Additionally, forensic analysis confirms that Christopher Knoll copied all of these files on February 9, 2017, one day prior to leaving Segerdahl, and continued to access these documents through March 2, 2017, nearly three weeks after his last Segerdahl workday.

77.     For a substantial period of time prior to and through their resignations and actual separations from Segerdahl employment, and while all of the Individual Defendants owed Segerdahl fiduciary duties of loyalty, honesty and confidentiality, each and all of them deliberately but surreptitiously worked for American Litho and against the commercial and business interests of Segerdahl.  As a consequence, all of the foregoing acts of misconduct alleged against the Individual Defendants occurred in their capacities as agents and servants of American Litho, such that American Litho is, by and through those alleged acts of misconduct, vicariously, as well as individually, liable to Segerdahl.

—<b>Segerdahl's Demand Letters to Defendants</b>—

78.     On February 20, 2017, Segerdahl sent demand letters to each of the Individual Defendants, except for Eugene "Corky" Czech and Vince Dante, confirming their post-employment obligations to Segerdahl, demanding that they cease and desist their wrongful conduct, demanding the return of certain documents and electronically stored information, requesting assurances that their wrongful conduct had ceased and requesting a written accounting of all specific actions taken to cease their wrongful conduct.  (Copies of the demand letters Segerdahl sent to the Individual Defendants are attached as **Group Exhibit D**.)

79.     On February 20, 2017, Segerdahl sent a demand letter to American Litho informing it of the Individual Defendants' post-employment obligations to Segerdahl and their apparent breaches of their fiduciary and other obligations to Segerdahl; demanding that American Litho cease and desist from using or disclosing Segerdahl's Confidential Information; demanding the return of certain documents and electronically stored information; requesting assurances that American Litho is not in possession of any materials belonging to Segerdahl; and demanding that American Litho take immediate disciplinary measures against the Individual

Defendants, including termination of their employment.  (A copy of the demand letter Segerdahl sent to American Litho is attached as **Exhibit E**.)

80.    On February 23, 2017, American Litho's outside general counsel sent a response letter to Segerdahl on behalf of American Litho and the Individual Defendants, although it was not clear from the response letter whether American Litho's outside general counsel also represents the Individual Defendants.  Therein, American Litho's outside general counsel stated that (1) the Individual Defendants and American Litho "do not possess any tangible or electronically kept information containing any trade secrets, and therefore there is nothing to return"; (2) "[n]o wrongful conduct has taken place and no use of [Segerdahl] forms or documents has or will occur"; (3) "[n]o specific actions are necessary"; and (4) "[n]o cease and desist is necessary."  (A copy of the response letter is attached as **Exhibit F**.)

81.    On March 10, 2017, Segerdahl sent a response letter to American Litho's outside general counsel and letters to Daniella Tucci and Christopher Knoll.  In the letter to American Litho, Segerdahl requested confirmation from counsel as to which, if any, among the Individual Defendants and American Litho he represents.  Segerdahl also provided a summary of the results of the ongoing forensic investigation of the Individual Defendants' Segerdahl-issued computers, including Daniella Tucci's and Christopher Knoll's attachment of certain USB storage devices to their Segerdahl computers and other wrongful conduct.  In addition, Segerdahl reiterated its request that Defendants return any all of Segerdahl's documents, files and materials, including any such materials that may have been saved on any USB storage device.  (Copies of these letters are attached as **Exhibit G**.)

82.    On March 15, 2017, American Litho's outside general counsel sent another letter to Segerdahl, stating therein that he represents American Litho "as its general counsel" and that

he has interviewed certain of the Individual Defendants relating to this matter. American Litho's outside general counsel also made certain admissions regarding the Individual Defendants' wrongful conduct, including that (1) Christopher Knoll "downloaded his desktop drive onto a thumb drive . . . prior to leaving" Segerdahl; and (2) Daniella Tucci, while employed at Segerdahl, regularly "copied files and either emailed them to herself in a zip file or copied files to a thumb drive so that she could perform her work at home." This representation is patently false, as forensic examination reveals that Daniella Tucci's USB devices were attached only once to her Segerdahl-issued computer and after she resigned her employment. Additionally, although the response letter claims that she, while employed at Segerdahl, "routinely p[er]formed additional work from home one or two days per week," that is simply not true. Moreover, her claim is expressly at odds with the Company Property Acknowledgment that Segerdahl required her to sign and abide by. (*See* Group Ex. C.) Finally, American Litho enclosed Christopher Knoll's thumb drive with this letter.

83.     Segerdahl sent additional letters to American Litho, Christopher Knoll and Daniella Tucci on March 28, 2017, urging them to turn over the outstanding devices Daniella Tucci used in her misappropriation of confidential information. (Copies of these letters are attached as **Exhibit H**.)

### —Defendants' False Representations to the Court—

84.     On May 2, 2017, Defendants filed their Response in Opposition to Plaintiff's Emergency Motion for a Temporary Restraining Order. (*See* Dkt. 38.) In that response, Defendants falsely stated, "No Segerdahl information of any kind was transferred to American Litho." (Dkt. 38 at 1.) Three weeks later, on May 24, 2017, American Litho admitted in its discovery responses that (a) "Michael Ferruzza copied files from the desktop computer that he

used while he was employed by Segerdahl to an external USB hard drive and . . . attached that external USB hard drive and uploaded files contained on that drive to his American Litho Mac Computer"; and (b) "Christopher Knoll . . . attached a thumb drive to his American Litho-issued computer, which files Mr. Knoll had copied off of the desktop of his Segerdahl-issued computer." (A copy of American Litho's Objections and Responses to Plaintiff's First Set of Expedited Interrogatories is attached as **Exhibit I**.) (*See* Ex. I at Interrog. No. 2.)

85.     On May 3, 2017, Michael Ferruzza executed a Declaration in support of Defendants' Response in Opposition to Plaintiff's Emergency Motion for a Temporary Restraining Order. (*See* Dkt. 38-1, Michael Ferruzza Decl.) In that Declaration, Michael Ferruzza falsely stated, "When I left, I did not take with me any production materials. I did not take any proofs, working files, work in progress, final or waste product or any other part of a production job in whole or in part." (*See id.* ¶ 12.) Three weeks later, on May 24, 2017, Michael Ferruzza admitted in his discovery responses that, on January 30, 2017, he connected an external USB hard drive to his Segerdahl computer and copied approximately 1,350 documents from his computer to the USB drive. (A copy of Michael Ferruzza's Objections and Responses to Plaintiff's First Set of Expedited Interrogatories is attached as **Exhibit J**.) (*See* Ex. J at Interrog. No. 1.) Michael Ferruzza transferred those Segerdahl documents to his American Litho computer and, on information and belief, to the American Litho network/servers. The 1,350 documents that Michael Ferruzza misappropriated from Segerdahl are listed in a spreadsheet that he produced in expedited discovery. The overwhelming majority of the 1,350 documents listed in the spreadsheet have titles showing that they are Segerdahl's business information and/or information of Segerdahl customers entrusted to Segerdahl. The confidential Segerdahl business information listed in the Michael Ferruzza spreadsheet includes customer production materials,

including proofs, working files, works in progress, final or waste product and other parts of production jobs (and compilations thereof).

**—Anthony Ferruzza's Threat Directed to Segerdahl's CEO—**

86.     On or about April 27, 2017, Anthony Ferruzza initiated a telephone conversation with Rick Joutras, Segerdahl's Chairman of the Board and former CEO. During that call, Anthony Ferruzza told Rick Joutras that Segerdahl's CEO, Mary Lee Schneider, had better back off from pursuing Segerdahl's lawsuit against Defendants and that, if she did not back off, Anthony Ferruzza would disclose allegedly damaging information relating unspecified bad conduct by Segerdahl, of which he allegedly had knowledge by virtue of his Segerdahl employment.

**COUNT I**
**VIOLATION OF DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836**
**(Against the Individual Defendants)**

87.     Segerdahl incorporates its allegations in Paragraphs 1 through 86 as if fully set forth in this Paragraph.

88.     Segerdahl's Trade Secrets are proprietary and confidential to Segerdahl, and they constitute protectable trade secrets under the Defend Trade Secrets Act. *See* 18 U.S.C. § 1839(3) (defining the term "trade secret").

89.     Segerdahl has taken reasonable efforts to protect and maintain the secrecy and confidentiality of its Trade Secrets.

90.     Segerdahl's Trade Secrets are not generally known in the industry or to the general public, and their secrecy confers substantial economic advantage and benefit to Segerdahl. Knowledge of this information would also confer a substantial economic benefit to Segerdahl's competitors, including American Litho.

91.     The circumstances of the Individual Defendants' respective employment with Segerdahl gave rise to fiduciary duties and obligations to maintain the secrecy of Segerdahl's Trade Secrets and to strictly limit the use of such Trade Secrets to Segerdahl business activities and for Segerdahl's exclusive benefit.

92.     The Individual Defendants, through improper means and without authorization, either directly or indirectly misappropriated, misused and/or disclosed Segerdahl's Trade Secrets to and for the benefit of themselves and American Litho.

93.     In addition, the Individual Defendants have been systematically targeting and soliciting key Segerdahl employees to work for American Litho, knowing that they possess specific knowledge of Segerdahl Trade Secrets and that such Trade Secrets would provide immediate benefit to American Litho.

94.     As a direct and proximate result of the Individual Defendants' deliberate, willful and malicious misappropriation of Segerdahl's Trade Secrets, Segerdahl has sustained and will continue to sustain severe, immediate and irreparable harm, damage and injury to the value of its Trade Secrets and its competitive advantage, which Segerdahl has expended significant time, effort and money to secure.

WHEREFORE, Segerdahl respectfully requests that the Court enter an Order granting judgment in favor of Segerdahl and against the Individual Defendants on Count I and ordering the following relief:

(a)     the issuance of temporary, preliminary and permanent injunctive relief enjoining the Individual Defendants, and every person and entity acting in concert with them, including, but not limited to, American Litho, from directly or indirectly misappropriating, disclosing and/or using Segerdahl's Trade Secrets;

(b)     the issuance of a mandatory injunction compelling the Individual Defendants, and every person and entity acting in concert with them,

including, but not limited to, American Litho, to return all documents and other materials containing or constituting Segerdahl's Trade Secrets;

(c)    the award of compensatory damages in an amount to be determined at trial;

(d)    the award of exemplary and other damages pursuant to 18 U.S.C. § 1836(b)(3)(C);

(e)    reasonable attorneys' fees pursuant to 18 U.S.C. § 1836(b)(3)(D); and

(f)    such other relief as the Court deems just and proper.

## COUNT II
## VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030
### (Against the Individual Defendants)

95.    Segerdahl incorporates its allegations in Paragraphs 1 through 86 as if fully set forth in this Paragraph.

96.    The Individual Defendants' Segerdahl-issued computing devices were each used in interstate commerce, and they each constitute a "protected computer" under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030(e)(2)(b).

97.    Without authorization or by exceeding authorized access, the Individual Defendants intentionally accessed their respective Segerdahl-issued computing devices and/or the Segerdahl network/email systems with the intent to defraud Segerdahl in violation of Sections 1030(a)(2)(c), (a)(4) and (a)(5) of the CFAA, including by:

(a)    obtaining certain information from the Segerdahl-issued computing devices and/or the Segerdahl network;

(b)    obtaining copies of certain documents and files of value from the Segerdahl-issued computing devices and/or the Segerdahl network;

(c)    deleting electronic files from the Segerdahl-issued computing devices and/or the Segerdahl network; and

(d)    accessing the Segerdahl email accounts of Segerdahl's CEO, Mary Lee Schneider, and Chairman of the Board and former CEO, Rick Joutras; copying confidential information from those Segerdahl email accounts

pertaining to Segerdahl's business and the sale thereof; and pasting the purloined information into emails directed from Vince Dante's personal email account, Vdante1@me.com, to Anthony Ferruzza's personal email account, Aferruzza@att.net.

98. By engaging in the foregoing misconduct for the purpose of misappropriating Segerdahl's Confidential Information and Trade Secrets, the Individual Defendants breached their fiduciary duties and other obligations owed to Segerdahl. The Individual Defendants had no authority or authorization for the foregoing misconduct.

99. The Individual Defendants intentionally and recklessly caused damage and loss to Segerdahl in excess of $5,000 because their conduct impaired the integrity of Segerdahl's protected computers and required Segerdahl to expend resources in excess of $5,000 to investigate the foregoing misconduct, conduct forensic examination of the devices to ascertain the scope of the Individual Defendants' misconduct, and perform certain remedial measures required as a result of such misconduct.

100. As a further direct and proximate cause of the foregoing misconduct, Segerdahl has been damaged and suffered loss in an amount in excess of $5,000 to the extent the Individual Defendants accessed, deleted, destroyed and copied electronic files containing Confidential Information and Trade Secrets belonging to Segerdahl for their personal use and/or that of American Litho.

WHEREFORE, Segerdahl respectfully requests that the Court enter an Order granting judgment in favor of Segerdahl and against the Individual Defendants on Count II and ordering the following relief:

(a) the issuance of temporary, preliminary and permanent injunctive relief enjoining the Individual Defendants, and every person and entity acting in concert with them, from directly or indirectly misappropriating, disclosing and/or using Segerdahl's Confidential Information and Trade Secrets;

(b) the issuance of a mandatory injunction compelling the Individual Defendants, and every person and entity acting in concert with them, including, but not limited to, American Litho, to return all documents and other materials containing or constituting Segerdahl's Confidential Information and Trade Secrets;

(c) the award of compensatory damages in an amount to be determined at trial pursuant to 18 U.S.C. § 1030(g); and

(d) such other relief as the Court deems just and proper.

## COUNT III
## VIOLATION OF THE ILLINOIS TRADE SECRETS ACT, 765 ILCS 1065/1 *et seq.*
### (Against the Individual Defendants)

101. Segerdahl incorporates its allegations in Paragraphs 1 through 86 as if fully set forth in this Paragraph.

102. Segerdahl's Trade Secrets are proprietary and confidential to Segerdahl, and they constitute protectable trade secrets under the Illinois Trade Secrets Act. *See* 765 ILCS § 1065/2(d) (defining the term "trade secret").

103. Segerdahl has taken reasonable efforts to protect and maintain the secrecy and confidentiality of its Trade Secrets.

104. Segerdahl's Trade Secrets are not generally known in the industry or to the general public, and their secrecy confers substantial economic advantage and benefit to Segerdahl. Knowledge of this information would also confer a substantial economic benefit to Segerdahl's competitors, including American Litho.

105. The circumstances of the Individual Defendants' respective employment with Segerdahl gave rise to fiduciary duties and obligations to maintain the secrecy of Segerdahl's Trade Secrets and to strictly limit the use of such Trade Secrets to Segerdahl business activities and for Segerdahl's exclusive benefit.

106.    The Individual Defendants, through improper means and without authorization, either directly or indirectly misappropriated, misused and/or disclosed Segerdahl's Trade Secrets to and for the benefit of themselves and American Litho.

107.    In addition, the Individual Defendants have been systematically targeting and soliciting key Segerdahl employees to work for American Litho, knowing that such employees possess specific knowledge of Segerdahl Trade Secrets and that such Trade Secrets would provide immediate benefit to American Litho.

108.    Moreover, each Individual Defendant is performing and will continue to perform work for American Litho that is so similar to his or her work at Segerdahl that it will not be possible for him or her to discharge those responsibilities without disclosing, using and/or relying upon his or her knowledge of Segerdahl's Trade Secrets for the benefit of American Litho.  Thus, not only have the Individual Defendants already taken, disclosed, used and/or relied upon Segerdahl's Trade Secrets for the benefit of themselves and American Litho, it is inevitable that the Individual Defendants will continue to do so unless they are restrained and enjoined from continuing to do so.

109.    As a direct and proximate result of the Individual Defendants' deliberate, willful and malicious misappropriation of Segerdahl's Trade Secrets, Segerdahl has sustained and will continue to sustain severe, immediate and irreparable harm, damage and injury to the value of its Trade Secrets and competitive advantage, which Segerdahl has expended significant time, effort and money to secure.

WHEREFORE, Segerdahl respectfully requests that the Court enter an Order granting judgment in favor of Segerdahl and against the Individual Defendants on Count III and ordering the following relief:

(a)     the issuance of temporary, preliminary and permanent injunctive relief enjoining the Individual Defendants, and every person and entity acting in concert with them, including, but not limited to, American Litho, from directly or indirectly misappropriating, disclosing and/or using Segerdahl's Trade Secrets;

(b)     the issuance of a mandatory injunction compelling the Individual Defendants, and every person and entity acting in concert with them, including, but not limited to, American Litho, to return all documents and other materials containing or constituting Segerdahl's Trade Secrets;

(c)     the award of compensatory damages in an amount to be determined at trial;

(d)     exemplary and other damages pursuant to 765 ILCS 1065/4(a);

(e)     reasonable attorneys' fees pursuant to 765 ILCS 1065/5; and

(f)     such other relief as the Court deems just and proper.

**COUNT IV**
**BREACH OF FIDUCIARY DUTY**
**(Against the Individual Defendants)**

110.    Segerdahl incorporates its allegations in Paragraphs 1 through 86 as if fully set forth in this Paragraph.

111.    As employees of Segerdahl, the Individual Defendants each owed Segerdahl fiduciary duties, including, but not limited to, a duty to act at all times with the utmost good faith, loyalty, honesty and fair dealing towards Segerdahl, to avoid self-dealing, conflicts of interest and acting for his or her personal benefit to the exclusion of Segerdahl's interest, and to act in the best interests of Segerdahl in all matters relating to its business.

112.    Segerdahl placed trust and confidence in the Individual Defendants that they would abide by their fiduciary duties.

113.    On information and belief, while still employed by Segerdahl, the Individual Defendants each breached their respective fiduciary duties by, among other things, engaging in the following conduct:

(a)    extensively preparing to become engaged with and employed by (and actually becoming engaged with and employed by) American Litho, a business that competes directly with Segerdahl;

(b)    extensively preparing to perform work and other services (and actually performing work and other services) on behalf of American Litho in competition with Segerdahl;

(c)    extensively preparing to solicit, induce and/or encourage certain customers of Segerdahl to purchase, from a source other than Segerdahl, a product or service similar to and competitive with that sold or offered by Segerdahl and which could be supplied by Segerdahl;

(d)    extensively preparing to solicit, induce and/or encourage certain suppliers, licensors, agents, representatives or other persons to terminate or adversely alter its/their business relationship with Segerdahl;

(e)    extensively preparing to solicit for employment or hire (and actually soliciting and hiring) certain employees and representatives of Segerdahl, including but not limited to the Individual Defendants, certain sales production and support staff;

(f)    taking, using, disclosing and/or relying on Segerdahl's Confidential Information for their own benefit and for the benefit of American Litho to the detriment of Segerdahl;

(g)    misusing Segerdahl property, including computers, telephones and other resources, to perform work on behalf of themselves and American Litho in competition with Segerdahl;

(h)    misusing Segerdahl property and IT administrator credentials, including Segerdahl networks and email systems, to illegally and surreptitiously (i) use a personal iPad to access the Segerdahl email accounts of Segerdahl's CEO, Mary Lee Schneider, and Chairman of the Board and former CEO, Rick Joutras; (ii) copy confidential information from those Segerdahl email accounts pertaining to Segerdahl's business and the sale thereof; and (iii) paste the purloined information into emails directed from Vince Dante's personal email account, Vdante1@me.com, to Anthony Ferruzza's personal email account, Aferruzza@att.net; and

(i)  actively exploiting their positions with Segerdahl for personal benefit and hindering Segerdahl's ability to conduct business.

114.  These breaches of fiduciary duty have proximately caused and, unless restrained and enjoined, will continue to cause Segerdahl severe, immediate and irreparable harm, damage and injury for which Segerdahl has no adequate remedy at law.

115.  These breaches of fiduciary duty were part of an overall covert, pre-planned and calculated scheme, were knowing, intentional and reckless, and were of such an aggravated character as to warrant the imposition of punitive damages, attorneys' fees and costs.

WHEREFORE, Segerdahl respectfully requests that the Court enter an Order granting judgment in favor of Segerdahl and against the Individual Defendants on Count IV and ordering the following relief:

(a)  the issuance of temporary, preliminary and permanent injunctive relief enjoining each Individual Defendant, and every person and entity acting in concert with him or her, including, but not limited to, American Litho, from directly or indirectly:

(i)  being engaged with or employed by American Litho;

(ii)  soliciting, inducing and/or encouraging any customers of Segerdahl to purchase, from a source other than Segerdahl, a product or service similar to and competitive with that sold or offered by Segerdahl and which could be supplied by Segerdahl;

(iii)  soliciting, inducing and/or encouraging any of Segerdahl's suppliers, licensors, agents, representatives or other persons to terminate or adversely alter its/their business relationship with Segerdahl;

(iv)  soliciting or hiring on behalf of American Litho any employees or representatives of Segerdahl; and

(v)  using, disclosing and/or relying on Segerdahl's Confidential Information and Trade Secrets for their own benefit and for the benefit of American Litho to the detriment of Segerdahl;

(b)     the imposition of a constructive trust and the disgorgement of salaries and the value of any other benefits (including, but not limited to, any such benefits relating to SARs awards paid to Anthony Ferruzza) paid or provided to the Individual Defendants by Segerdahl, American Litho or any other person or entity while the Individual Defendants were in breach of their respective fiduciary duties to Segerdahl;

(c)     the imposition of a constructive trust and the disgorgement of salaries and the value of any other benefits (including, but not limited to, any such benefits relating to SARs awards paid to Anthony Ferruzza) paid or provided to the Individual Defendants by Segerdahl, American Litho or any other person or entity following the termination of their employment with Segerdahl, to the extent that the salary and benefits are related to and naturally flow from their prior breaches of fiduciary duty;

(d)     the imposition of a constructive trust and the disgorgement of any payments or profits received by the Individual Defendants and/or American Litho as a result of the Individual Defendants' respective breaches of fiduciary duty;

(e)     the award of compensatory damages in an amount to be determined at trial;

(f)     the award of punitive damages in an amount to be determined at trial; and

(g)     such other relief as the Court deems just and proper.

## COUNT V
## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
### (Against All Defendants)

116.     Segerdahl incorporates its allegations in Paragraphs 1 through 86 as if fully set forth in this Paragraph.

117.     Segerdahl has a protectable interest and valid business expectancy in maintaining a stable workforce through continued relationships with its employees that have been cultivated, obtained and maintained through the investment of substantial time, effort and expense.  As a result of their employment with Segerdahl, the Individual Defendants had knowledge of these employee relationships.  As a result of American Litho's contacts with and employment of the Individual Defendants, American Litho had knowledge of these employee relationships.

118.    Segerdahl also has a protectable interest and valid business expectancy in maintaining its customer relationships (and potential customer relationships) through continued relationships with these customers (and potential customers) and their agents, which relationships have been cultivated, obtained and maintained through the investment of substantial time, effort and expense.   As a result of their employment with Segerdahl, the Individual Defendants had knowledge of these customer relationships (and potential customer relationships).   As a result of American Litho's contacts with and employment of the Individual Defendants, American Litho had knowledge of these customer relationships (and potential customer relationships).

119.    The Individual Defendants and American Litho, willfully, knowingly and without privilege, justification or excuse, tortiously interfered with Segerdahl's employee relationships by improperly soliciting and inducing employees to resign in order to hinder, impair and appropriate Segerdahl's business, undermine business relationships with Segerdahl's employees and otherwise compete unfairly with Segerdahl.

120.    The Individual Defendants and American Litho, willfully, knowingly, and without privilege, justification or excuse, tortiously interfered with certain of Segerdahl's customer relationships (and potential customer relationships) by improperly soliciting certain customers (and potential customers) in order to hinder, impair and appropriate Segerdahl's business, undermine business relationships with Segerdahl's customers (and potential customers) and otherwise compete unfairly with Segerdahl.

121.    The tortious interference by the Individual Defendants and American Litho is outside the scope of mere competition, and it has proximately caused and, unless restrained and

enjoined, will continue to cause Segerdahl severe, immediate and irreparable harm, damage and injury for which it has no adequate remedy at law.

122.     Such tortious interference, in disregard of Segerdahl's prospective economic advantage, has been deliberate, willful and malicious, and of such an aggravated character as to warrant the imposition of punitive damages, attorneys' fees and costs in addition to compensatory damages and injunctive relief.

WHEREFORE, Segerdahl respectfully requests that the Court enter an Order granting judgment in favor of Segerdahl and against Defendants on Count V and ordering the following relief:

(a)     the issuance of temporary, preliminary and permanent injunctive relief enjoining each Individual Defendant and American Litho, and every person and entity acting in concert with them, from directly or indirectly:

(i)     tortiously interfering with Segerdahl's employee relationships by improperly soliciting and inducing Segerdahl's employees to resign in order to hinder, impair and appropriate Segerdahl's business, undermine business relationships with Segerdahl's employees and otherwise compete unfairly with Segerdahl;

(ii)     tortiously interfering with certain of Segerdahl's customer relationships (and potential customer relationships) by improperly soliciting certain customers (and potential customers) in order to hinder, impair and appropriate Segerdahl's business, undermine business relationships with Segerdahl's customers (and potential customers) and otherwise compete unfairly with Segerdahl;

(iii)     otherwise interfering with Segerdahl's employee relationships or customer relationships (or potential customer relationships);

(b)     the award of compensatory damages in an amount to be determined at trial;

(c)     the award of punitive damages in an amount to be determined at trial; and

(d)     such other relief as the Court deems just and proper.

## COUNT VI
## AIDING AND ABETTING BREACH OF FIDUCIARY DUTY
### (Against All Defendants)

123.    Segerdahl incorporates its allegations in Paragraphs 1 through 86 as if fully set forth in this Paragraph.

124.    As employees of Segerdahl, the Individual Defendants each owed Segerdahl certain fiduciary duties during their respective employment.

125.    At all relevant times, each of the Individual Defendants and American Litho were aware of and had reason to know of the fiduciary duties owed to Segerdahl by the Individual Defendants.

126.    The Individual Defendants and American Litho knowingly and substantially committed acts that encouraged, aided and abetted, and participated in conduct that caused, the Individual Defendants to breach their fiduciary duties to Segerdahl.

127.    Among other things, the Individual Defendants and American Litho purposefully induced the Individual Defendants, while they were employed by Segerdahl, to:

  (a)   extensively prepare to become engaged with and employed by (and to actually become engaged with and employed by) American Litho, a business that competes directly with Segerdahl;

  (b)   extensively prepare to perform work and other services (and to actually perform work and other services) on behalf of American Litho in competition with Segerdahl;

  (c)   extensively prepare to solicit, induce and/or encourage (and to actually solicit, induce and/or encourage) certain customers of Segerdahl to purchase, from a source other than Segerdahl, a product or service similar to and competitive with that sold or offered by Segerdahl and which could be supplied by Segerdahl;

  (d)   extensively prepare to solicit, induce and/or encourage (and to actually solicit, induce and/or encourage) certain suppliers, licensors, agents, representatives or other persons to terminate or adversely alter its/their business relationship with Segerdahl;

(e)     extensively prepare to solicit for employment or hire (and to actually solicit and hire) certain employees and representatives of Segerdahl, including but not limited to the Individual Defendants, certain sales production and support staff and Eugene "Corky" Czech;

(f)     take, use, disclose and/or rely on Segerdahl's Confidential Information for their own benefit and for the benefit of American Litho to the detriment of Segerdahl;

(g)     misuse Segerdahl property, including computers, telephones and other resources, to perform work on behalf of themselves and American Litho in competition with Segerdahl;

(h)     misuse Segerdahl property and IT administrator credentials, including Segerdahl networks and email systems, to illegally and surreptitiously (i) use a personal iPad to access the Segerdahl email accounts of Segerdahl's CEO, Mary Lee Schneider, and Chairman of the Board/former CEO, Rick Joutras; (ii) copy confidential information from those Segerdahl email accounts pertaining to Segerdahl's business and the sale thereof; and (iii) paste the purloined information into emails directed from Vince Dante's personal email account, Vdante1@me.com, to Anthony Ferruzza's personal email account, Aferruzza@att.net; and

(i)     actively exploit their positions with Segerdahl for personal benefit (and for the benefit of American Litho) and hinder Segerdahl's ability to conduct business.

128.    Upon information and belief, the Individual Defendants and American Litho have induced and continue to induce the Individual Defendants and certain other Segerdahl employees to breach their fiduciary duties to Segerdahl.

129.    The Individual Defendants and American Litho knowingly and voluntarily accepted the benefits flowing or expected to flow from the breaches of fiduciary duties that they induced, including, without limitation: (a) the Individual Defendants performing work and other services for American Litho while still employed by Segerdahl; (b) the Individual Defendants' employment with American Litho and corresponding wages and benefits; (c) the ability to quickly and unfairly solicit Segerdahl's employees for employment with American Litho, solicit Segerdahl's customers for business with American Litho, and solicit Segerdahl's suppliers,

licensors, agents and representatives to adversely alter their business relationships with Segerdahl; and (d) access to Segerdahl's Confidential Information and other proprietary information and property.

130. The breaches of fiduciary duties by the Individual Defendants, together with the tortious inducement and participation of American Litho and the Individual Defendants, have proximately caused and, unless restrained and enjoined, will continue to cause Segerdahl severe, immediate and irreparable harm, damage and injury for which Segerdahl has no adequate remedy at law.

131. This misconduct is part of an overall scheme and conspiracy, was knowing, intentional and reckless, and was of such an aggravated character as to warrant the imposition of punitive damages.

WHEREFORE, Segerdahl respectfully requests that the Court enter an Order granting judgment in favor of Segerdahl and against Defendants on Count VI and ordering the following relief:

(a) the issuance of temporary, preliminary and permanent injunctive relief enjoining each Individual Defendant and American Litho, and every person and entity acting in concert with them, from directly or indirectly:

(i) being engaged with or employed by American Litho (applicable to the Individual Defendants), or employing the Individual Defendants (applicable to American Litho);

(ii) soliciting, inducing and/or encouraging any customers of Segerdahl to purchase, from a source other than Segerdahl, a product or service similar to and competitive with that sold or offered by Segerdahl and which could be supplied by Segerdahl;

(iii) soliciting, inducing and/or encouraging any of Segerdahl's suppliers, licensors, agents, representatives or other persons to terminate or adversely alter its/their business relationship with Segerdahl;

(iv)     soliciting or hiring on behalf of American Litho any employees or representatives of Segerdahl; and

(v)      using, disclosing and/or relying on Segerdahl's Confidential Information and Trade Secrets for their own benefit and for the benefit of American Litho to the detriment of Segerdahl;

(b)      the imposition of a constructive trust and the disgorgement of salaries and the value of any other benefits (including, but not limited to, any such benefits relating to SARS awards) paid or provided to the Individual Defendants by Segerdahl, American Litho or any other person or entity while the Individual Defendants were in breach of their respective fiduciary duties to Segerdahl;

(c)      the imposition of a constructive trust and the disgorgement of salaries and the value of any other benefits (including, but not limited to, any such benefits relating to SARS awards) paid or provided to the Individual Defendants by Segerdahl, American Litho or any other person or entity following the termination of the Individual Defendants' employment with Segerdahl, to the extent that the salary and benefits are related to and naturally flow from their prior breaches of fiduciary duty;

(d)      the imposition of a constructive trust and the disgorgement of any payments or profits received by the Individual Defendants and/or American Litho as a result of the Individual Defendants' respective breaches of fiduciary duty;

(e)      the award of compensatory damages in an amount to be determined at trial;

(f)      the award of punitive damages in an amount to be determined at trial; and

(g)      such other relief as the Court deems just and proper.

**COUNT VII**
**CONVERSION**
**(Against the Individual Defendants)**

132.    Segerdahl incorporates its allegations in Paragraphs 1 through 86 as if fully set forth in this Paragraph.

133.    The Segerdahl documents, files and other materials converted by the Individual Defendants constitute Segerdahl's personal and intellectual property, and, at all relevant times,

Segerdahl had the legal right and entitlement to the exclusive use, possession, custody and control of such property.

134.    In disregard of Segerdahl's legal right and entitlement, the Individual Defendants converted the Segerdahl documents, files and other materials constituting Segerdahl's Confidential Information without Segerdahl's consent and with the intent of depriving Segerdahl of the exclusive use, possession, custody and control of such property.

135.    Segerdahl has demanded in writing that the Individual Defendants return all Segerdahl documents, files and other materials, including any such materials containing Segerdahl's Confidential Information and Trade Secrets, in their possession, custody or control. To date, the Individual Defendants have not accounted for or returned the missing files, documents and other materials belonging to Segerdahl.

136.    As a direct and proximate result of the foregoing misconduct, Segerdahl has sustained and—unless the Individual Defendants are ordered to return all of the missing Segerdahl documents, files and other materials in their possession, custody or control—will continue to sustain severe, immediate and irreparable harm, damage and injury for which Segerdahl has no adequate remedy at law.

137.    The Individual Defendants' wrongful conversion of Segerdahl documents, files and other materials, in disregard of Segerdahl's rights, is part of an overall conspiracy and has been deliberate, willful and malicious.

WHEREFORE, Segerdahl respectfully requests that the Court enter an Order granting judgment in favor of Segerdahl and against the Individual Defendants on Count VII and ordering the following relief:

(a)    the issuance of temporary, preliminary, permanent and mandatory injunctive relief compelling the Individual Defendants to return all

documents, files and other materials, including but not limited to any such documents, files and other materials containing and/or comprising Segerdahl's Confidential Information and Trade Secrets (whether stored electronically or in hard copy), without retaining any copies;

(b)     the award of compensatory damages in an amount to be determined at trial;

(c)     the award of punitive damages in an amount to be determined at trial; and

(d)     such other relief as the Court deems just and proper.

## COUNT VIII
## UNFAIR COMPETITION
### (Against All Defendants)

138.    Segerdahl incorporates its allegations in Paragraphs 1 through 86 as if fully set forth in this Paragraph.

139.    The Individual Defendants and American Litho have each engaged in wrongful conduct and unfair competition, and they have thereby misappropriated Segerdahl's labors and expenditures to benefit themselves and at Segerdahl's expense, by:

(a)     being engaged with or employed by American Litho (applicable to the Individual Defendants), or employing the Individual Defendants (applicable to American Litho);

(b)     soliciting, inducing and/or encouraging certain customers of Segerdahl to purchase, from a source other than Segerdahl, a product or service similar to and competitive with that sold or offered by Segerdahl and which could be supplied by Segerdahl;

(c)     soliciting, inducing and/or encouraging certain of Segerdahl's suppliers, licensors, agents, representatives or other persons to terminate or adversely alter its/their business relationship with Segerdahl;

(d)     soliciting or hiring on behalf of American Litho certain employees or representatives of Segerdahl; and

(e)     using, disclosing and/or relying on Segerdahl's Confidential Information for the Individual Defendants' own benefit and for the benefit of American Litho to the detriment of Segerdahl.

140. The wrongful conduct and unfair competition by the Individual Defendants and American Litho are outside the scope of mere competition, and they have proximately caused and, unless restrained and enjoined, will continue to cause Segerdahl severe, immediate and irreparable harm, damage and injury for which Segerdahl has no adequate remedy at law.

141. Such wrongful conduct and unfair competition, in disregard of Segerdahl's protectable business interests, has been deliberate, willful and malicious, and of such an aggravated character as to warrant imposition of punitive damages, attorneys' fees and costs in addition to compensatory damages and injunctive relief.

WHEREFORE, Segerdahl respectfully requests that the Court enter an Order granting judgment in favor of Segerdahl and against Defendants on Count VIII and ordering the following relief:

    (a)    the issuance of temporary, preliminary and permanent injunctive relief enjoining each Individual Defendant and American Litho, and every person and entity acting in concert with them, from directly or indirectly:

        (i)    being engaged with or employed by American Litho (applicable to the Individual Defendants), or employing the Individual Defendants (applicable to American Litho);

        (ii)    soliciting, inducing and/or encouraging any customers of Segerdahl to purchase, from a source other than Segerdahl, a product or service similar to and competitive with that sold or offered by Segerdahl and which could be supplied by Segerdahl;

        (iii)    soliciting, inducing and/or encouraging any of Segerdahl's suppliers, licensors, agents, representatives or other persons to terminate or adversely alter its/their business relationships with Segerdahl;

        (iv)    soliciting or hiring on behalf of American Litho any employees or representatives of Segerdahl; and

        (v)    using, disclosing and/or relying on Segerdahl's Confidential Information for the Individual Defendants' own benefit and for the benefit of American Litho to the detriment of Segerdahl;

(b)     the award of compensatory damages in an amount to be determined at trial;

(c)     the award of punitive damages in an amount to be determined at trial; and

(d)     such other relief as the Court deems just and proper.

## COUNT IX
## CIVIL CONSPIRACY
### (Against All Defendants)

142.    Segerdahl incorporates its allegations in Paragraphs 1 through 86 as if fully set forth in this Paragraph.

143.    The Individual Defendants and American Litho knowingly and voluntarily entered into a scheme and agreement to engage in a combination of unlawful acts and misconduct including, without limitation, the following:

(a)     the Individual Defendants breached their fiduciary duties to Segerdahl, as set forth in Count IV, which breaches were aided and abetted by the Individual Defendants and American Litho, as set forth in Count VI;

(b)     the Individual Defendants and American Litho tortiously interfered with Segerdahl's prospective economic advantage, as set forth in Count V;

(c)     the Individual Defendants converted Segerdahl's documents, files and other materials, including but not limited to certain documents, files and other materials containing or comprising Segerdahl's Confidential Information;

(d)     the Individual Defendants and American Litho competed unfairly against Segerdahl, as set forth in Count VIII; and

(e)     the Individual Defendants violated the CFAA, as set forth in Count II.

144.    The intent, purpose and objective of the conspiracy, and the underlying combination of unlawful acts and misconduct committed by the Individual Defendants and American Litho, was to undermine Segerdahl and its business by unfairly competing against it as described above.

145.     The Individual Defendants and American Litho each understood and accepted the foregoing scheme and agreed to do their respective part, as described herein, to further accomplish the foregoing intent, purpose and objective.  Thus, by entering into the conspiracy, the Individual Defendants and American Litho have each deliberately, willfully and maliciously permitted, encouraged and/or induced all of the foregoing unlawful acts and misconduct.

146.     As a direct and proximate cause of the unlawful acts and misconduct undertaken by the Individual Defendants and American Litho in furtherance of the conspiracy, Segerdahl has sustained and, unless the Individual Defendants and American Litho are restrained and enjoined, will continue to sustain severe, immediate and irreparable harm, damage and injury for which Segerdahl has no adequate remedy at law.

WHEREFORE, Segerdahl respectfully requests that the Court enter an Order granting judgment in favor of Segerdahl and against Defendants on Count IX and ordering the following relief:

    (a)    the issuance of temporary, preliminary and permanent injunctive relief enjoining each Individual Defendant and American Litho, and every person and entity acting in concert with them, from directly or indirectly:

        (i)    being engaged with or employed by American Litho (applicable to the Individual Defendants), or employing the Individual Defendants (applicable to American Litho);

        (ii)    soliciting, inducing and/or encouraging any customers of Segerdahl to purchase, from a source other than Segerdahl, a product or service similar to and competitive with that sold or offered by Segerdahl and which could be supplied by Segerdahl;

        (iii)    soliciting, inducing and/or encouraging any of Segerdahl's suppliers, licensors, agents, representatives or other persons to terminate or adversely alter its/their business relationship with Segerdahl;

        (iv)    soliciting or hiring on behalf of American Litho any employees or representatives of Segerdahl;

(v)     using, disclosing and/or relying on Segerdahl's Confidential Information for their own benefit and for the benefit of American Litho to the detriment of Segerdahl;

(vi)     tortiously interfering with Segerdahl's employee relationships by improperly soliciting and inducing Segerdahl's employees to resign in order to hinder, impair and appropriate Segerdahl's business, undermine business relationships with Segerdahl's employees and otherwise compete unfairly with Segerdahl;

(vii)     tortiously interfering with certain of Segerdahl's customer relationships (and potential customer relationships) by improperly soliciting certain customers (and potential customers) in order to hinder, impair and appropriate Segerdahl's business, undermine business relationships with Segerdahl's customers (and potential customers) and otherwise compete unfairly with Segerdahl;

(viii)     otherwise interfering with Segerdahl's employee relationships or customer relationships (or potential customer relationships);

(b)     the issuance of temporary, preliminary, permanent and mandatory injunctive relief compelling the Individual Defendants to return all documents, files and other materials, including but not limited to any such documents, files and other materials containing and/or comprising Segerdahl's Confidential Information (whether stored electronically or in hard copy), without retaining any copies;

(c)     the award of compensatory damages in an amount to be determined at trial;

(d)     the award of punitive damages in an amount to be determined at trial; and

(e)     such other relief as the Court deems just and proper.

**COUNT X**
**UNJUST ENRICHMENT**
**(Against All Defendants)**

147.    Segerdahl incorporates its allegations in Paragraphs 1 through 86 as if fully set forth in this Paragraph.

148.    The misconduct of the Individual Defendants and American Litho, as alleged above, has enabled and will continue to enable them to compete unfairly against Segerdahl, and

to improperly take advantage of and exploit Segerdahl's legitimate and protectable business interests and goodwill.

149.   It would be inequitable and unjust for the Individual Defendants to retain compensation and other benefits paid to them by American Litho for their unfair competition and other misconduct.  Likewise, it would be inequitable and unjust for American Litho to retain the profits, revenues and other payments received as a result of their and the Individual Defendants' unfair competition and other misconduct.

150.   As a direct and proximate result of the Individual Defendants' and American Litho's unjust enrichment, Segerdahl has suffered and will continue to suffer severe, immediate and irreparable harm, damage and injury.

WHEREFORE, Segerdahl respectfully requests that the Court enter an Order granting judgment in favor of Segerdahl and against Defendants on Count X and ordering the following relief:

(a)   the imposition of a constructive trust and the disgorgement of salaries and the value of any other benefits (including, but not limited to, any such benefits relating to stock appreciation rights) paid or provided to the Individual Defendants by Segerdahl, American Litho or any other person or entity while the Individual Defendants were in breach of their respective fiduciary duties to Segerdahl;

(b)   the imposition of a constructive trust and the disgorgement of salaries and the value of any other benefits (including, but not limited to, any such benefits relating to stock appreciation rights) paid for provided to the Individual Defendants by Segerdahl, American Litho or any other person or entity following the termination of the Individual Defendants' employment with Segerdahl, to the extent that the salary and benefits are related to and naturally flow from their prior breaches of fiduciary duty;

(c)   the imposition of a constructive trust and the disgorgement of any payments or profits received by the Individual Defendants and/or American Litho as a result of the Individual Defendants' respective breaches of fiduciary duty;

(d)     the award of compensatory damages in an amount to be determined at trial; and

(e)     such other relief as the Court deems just and proper.

## **JURY DEMAND**
### **(All Claims)**

Segerdahl demands trial by jury on all the claims for damages.

Respectfully submitted,

THE SEGERDAHL CORP.

By:     _/s/ Nicholas Anaclerio_
        One of Its Attorneys

Nicholas Anaclerio, Bar No. 6187889
John W. Whittlesey, Bar No. 6297943
Emily C. Fess, Bar No. 6299322
Vedder Price P.C.
222 North LaSalle Street
Chicago, Illinois 60601
T:  +1 312 609 7500

Dated:  August 3, 2017

54