# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| THE SEGERDAHL CORP. d/b/a SG 360°, | ) |
| Plaintiff, | ) |
| | ) Case No. 17 cv 3015 |
| v. | ) |
| | ) Judge Sharon Johnson Coleman |
| ANTHONY FERRUZZA, MICHAEL FERRUZZA, DANIELLA TUCCI, CHRISTOPHER KNOLL, ERICA KNOLL, EUGENE "CORKY" CZECH, VINCE DANTE, and AMERICAN LITHO, INC., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff The Segerdahl Corp. d/b/a SG360° ("Segerdahl") filed an Amended Complaint against former employees Anthony Ferruzza, Michael Ferruzza, Daniella Tucci, Christopher Knoll, Erica Knoll, Eugene "Corky" Czech, Vince Dante, and American Litho, Inc., alleging violations of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et. seq.*, the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 *et seq.*, the Illinois Trade Secrets Act ("ITSA"), 765 Ill.Comp.Stat. 1065/1 *et seq.*, breach of fiduciary duty, tortious interference with prospective economic advantage, aiding and abetting breach of fiduciary duty, conversion, unfair competition, civil conspiracy, and unjust enrichment. Defendant Vince Dante filed a Motion to Dismiss [146] pursuant to Rule 12(b)(1) and 12(b)(6) for failure to state a claim and lack of supplemental jurisdiction. For the reasons set forth herein, the motion is granted in part and denied in part.

**Background**

The following facts are taken from Plaintiff's Amended Complaint (Dkt. 129). Segerdahl Corp. is a commercial printing and multichannel direct marketing solutions provider, headquartered in Wheeling, Illinois. (Dkt. 129 at ¶ 22). Segerdahl's multichannel marketing services include research, concept strategy and execution, including but not limited to data programming, commercial printing, direct-mail production, data analytics, distribution and fulfillment. (*Id.* at ¶ 22). Segerdahl has manufacturing operations in Broadview and Wheeling, Illinois and sales locations elsewhere in Illinois, and also California, Michigan, Minnesota, New Jersey, New York, and Texas. (*Id.* at ¶ 22).

Defendant Vince Dante is a former employee of Segerdahl, hired in April 2000 as a color/scanning operator. He was later promoted to Director of Infrastructure and Networking and oversaw the IT help desk, security, and Segerdahl's network. (*Id.* at ¶ 36). All the individual defendants, including Dante, had access to Segerdahl's confidential information and trade secrets, which were stored both in paper and electronic format. (*Id.* at ¶ 40). The individual defendants also developed working relationships with Segerdahl's customer base while assisting in the development of new business initiatives. (*Id.* at ¶ 42).

Segerdahl alleges that from October through December 2016, Dante used his position and access to Segerdahl employee credentials to login to email accounts of Segerdahl's CEO and Chairman of the Board and former CEO to copy confidential information. (*Id.* at ¶ 62). Dante allegedly copied the information into emails directed to his personal email account and that of defendant Anthony Ferruzza. Dante's alleged misconduct also includes helping Ferruzza by dismantling a Segerdahl-owned MacBook Pro laptop computer and removing the internal hard drive to remove information from the computer. (*Id.* at ¶ 63). Dante initially resigned from Segerdahl in January 2017, but revoked his resignation days later. Segerdahl terminated Dante on June 26, 2017.

2

(*Id.* at ¶ 53). Unlike the other individual defendants, Dante is not employed by Segerdahl's competitor defendant American Litho. (*Id.* at ¶ 53).

**Legal Standard**

When a party moves to dismiss based on lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the district court must accept all well-pleaded facts within the complaint as true, but may also consider evidence outside of the pleadings to ensure jurisdiction is proper. *Evers v. Astrue*, 536 F.3d 651, 656-67 (7th Cir. 2008) (citing *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007)).

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). When considering the motion, the Court accepts as true all well pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed. 2d 868 (2000); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct.1955, 167 L.Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**Discussion**

Dante moves to dismiss the Amended Complaint entirely, arguing that Counts I-VII fail to state a claim, Counts IV-X are preempted by ITSA, and that the Court should decline to exercise supplemental jurisdiction after dismissing the federal claims in Count I (DTSA) and II (CFAA). The Court will begin by examining the trade secret claims.

3

*1. Counts I and III: Defend Trade Secrets Act Claim and Illinois Trade Secret Act*

Dante argues that this Court should dismiss Segerdahl's trade secret misappropriation allegations for failure to state a claim. Dante asserts that Segerdahl has not specifically identified the trade secrets at issue and that the complaint lacks allegations that the trade secrets are used in commerce or for the defendant's business. Both statutes at issue define trade secrets.

DTSA creates a private cause of action in favor of the "owner of a trade secret that is misappropriated…if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). Under the DTSA, the term "trade secret" is:

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—
>
> (A) the owner thereof has taken reasonable measures to keep such information secret; and
>
> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information;

18 U.S.C. § 1839(3). For the purposes of this Act, "misappropriation" is either: "(A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" or "(B) disclosure or use of a trade secret of another without express or implied consent" under certain conditions.[7] *Id.* § 1839(5).

To prevail under ITSA, "the plaintiff must demonstrate that the information at issue was a trade secret, it was misappropriated and it was used in the defendant's business." *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 721 (7th Cir. 2003); *see also Alpha Sch. Bus Co. v. Wagner*, 391 Ill.App.3d 722, 740 (1st Dist. 2009). ITSA defines "trade secret" as:

4

> [I]nformation, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that:
> (1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and
> (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.

765 Ill. Comp. Stat. Ann. 1065/2(d). The Act's statutory requirements focus on the secrecy of the information sought to be protected. *Learning Curve Toys, Inc.*, 342 F.3d at 723; *see also Mangren Research & Dev. Corp. Nat'l Chem. Co., Inc.*, 87 F.3d 937, 942 (7th Cir. 1996).

The Amended Complaint alleges that Dante used his position to mine the email accounts of Segerdahl executives and copy "confidential information from those Segerdahl email accounts pertaining to Segerdahl's business and the sale thereof[.]" Dkt. 129 at ¶62. Although Segerdahl makes more definite allegations of what constitutes trade secrets elsewhere in the complaint, none of those allegations relate to the alleged misappropriation by Dante. He maintains that Segerdahl's complaint against him fails because identifying only "broad areas of technology" and asserting that something there must have been secret is insufficient to state a claim. *See Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1266 (7th Cir. 1992). Courts in this district have concluded that the existence of a trade secret is ordinarily a question of fact best resolved by the fact finder after both sides have fully presented evidence, *Learning Curve Toys, Inc.*, 342 F.3d at 723, and that "trade secret allegations are adequate in instances where the information and the efforts to maintain its confidentiality are described in general terms." *Mission Measurement Corp. v. Blackbaud, Inc.*, 216 F.Supp.3d 915, 921 (N.D. Ill. 2016) (St.Eve, J.) (quoting *Covenant Aviation Security, LLC v. Berry*, 15 F.Supp.3d 813, 818 (N.D. Ill. 2014)).

A review of cases where trade secrets have been found to be adequately pleaded, and those cases that found the allegations lacking, supports the conclusion that the allegations here against

5

Dante are insufficient. In *Mission Measurement Corp.*, the court found the allegations sufficient because the plaintiff identified specialized methods, design specifications, business plans, and product development plans. 216 F.Supp.3d at 921. Similarly in *Covenant Aviation Security, LLC v. Berry*, 15 F.Supp.3d 813, 819 (N.D. Ill. 2014) (Lefkow, J.), the plaintiff identified specific types of business information and proprietary information, including "profit and loss information, internal costs and overhead, operational information as related to San Francisco and other facilities throughout the country, and specific bid and proposal information related to San Francisco and other airports." By contrast, the court dismissed the counterclaim in *Carpenter v. Aspen Search Advisers, LLC* because there were no specific allegations about the nature of the confidential data for which the party asserted trade secret protection. No. 10 C 6823, 2011 WL 1297733, at *3 (N.D. Ill. Apr. 5, 2011) (Pallmeyer, J.). The court in *Thermal Zone Prod. Corp. v. Echo Eng'g, Ltd.*, found the alleged trade secrets lacked sufficient specificity because the plaintiffs "made blanket generalizations regarding the information and documentation of their cooking ovens, [but] they have failed to specify with any exactitude which pieces of information actually constitute trade secrets." No. 93 C 0556, 1993 WL 358148, at *5 (N.D. Ill. Sept. 14, 1993) (Marovich, J.). The allegations here, clearly, align more with the cases that have found the allegations insufficient. Thus, this Court finds that Segerdahl's trade secret misappropriation claims against Dante under DTSA and ITSA are too broadly defined and are dismissed without prejudice.

*2. Count II: Computer Fraud and Abuse Act Claim*

Dante argues that the Amended Complaint fails to allege that Segerdahl has suffered damage under the CFAA as a result of Dante's conduct. Segerdahl contends that Dante violated provisions 1030(a)(2)(C), (a)(4), and (a)(5) of the CFAA by obtaining information, copies of certain documents and files from Segerdahl-issued computing devices and the Segerdahl network, and by accessing Segerdahl email accounts of Segerdahl's CEO and Chairman of the Board. (Dkt. 129 at ¶ 97). The

Act allows for "[a]ny person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator…" 18 U.S.C. § 1030(g). Under CFAA, a plaintiff must allege "(1) damage or loss; (2) caused by (3) a violation of one of the substantive provisions set forth in § 1030(a), and (4) conduct involving one of the factors of harm set forth in § 1030(c)(4)(A)(i)(I)-(VI)." *Maximum Indep. Brokerage, LLC v. Smith*, 218 F.Supp.3d 630, 636 (N.D. Ill 2016) (Der-Yeghiayan, J.); *see also Motorola, Inc. v. Lemko Corp*, 609 F.Supp.2d 760, 765 (N.D. Ill. 2009) (Kennelly, J.). For violations of section 1030(a)(2)(C) and 1030(a)(4) either damage *or* loss needs to be alleged, not both. *See Motorola*, 609 F.Supp.2d at 766; 18 U.S.C. § 1030(a)(2)(C), (a)(4). A violation of section 1030(a)(5)(C) requires both damage *and* loss. *See Motorola*, 609 F.Supp.2d at 766; 18 U.S.C. § 1030(a)(5)(C).

Damage means "any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8). The Seventh Circuit has held that a statutory requirement of damage is satisfied when the defendant's acts "impair the integrity or availability of data, a program, or information." *Intl. Airport Centers, LLC v. Citrin*, 440 F.3d 418, 419 (7th Cir. 2006); *see also Fidlar Technologies v. LPS Real Estate Data Solutions, Inc.*, 810 F.3d 1075, 1084 (7th Cir. 2016) ("hence, 'causes damage' encompasses clearly destructive behavior such as using a virus or worm or deleting data. But it may also include less obviously invasive conduct, such as flooding an email account.").

The term loss means "any reasonable costs to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11). Courts in this district have found that to adequately plead a loss under CFAA, it is the plaintiff's burden to allege that a defendant's action caused losses over $5,000 in a one year period, relating to damages and security assessments. *See Motorola, Inc.*, 609 F.Supp.2d at 768; *see also Patrick Patterson Custom*

7

*Homes, Inc. v. Bach,* 586 F.Supp.2d 1026, 1036 (N.D. Ill. 2008) ("assessing a repairing damage to computer files 'qualify as compensable because they are a cost of investigating or remedying damage to a computer, or cost incurred because the computer's service was interrupted.'") (internal quotes omitted).

Dante argues that Segerdahl's complaint fails to adequately allege both damage and loss under the CFAA. He argues that the Amended Complaint only alleges copying of documents, and merely copying electronic information is insufficient to allege damage under the CFAA. He further asserts that purely remedial or investigative costs do not count towards the $5,000 statutory threshold for assessing loss. Segerdahl claims that Dante caused damage under the CFAA by physically removing the internal hard drive of Defendant Anthony Ferruzza's Segerdahl-issued computer. (Dkt. 129 at ¶ 63). Additionally, Segerdahl alleges that Dante caused damage by conspiring with Anthony Ferruzza to access Segerdahl computers and delete electronic files. (Id. at ¶ 62). Segerdahl alleges that as a result of Dante's conduct, they had to expend resources "in excess of $5,000…to investigate the foregoing misconduct, conduct forensic examination of the devices to ascertain the scope of the Individual Defendant's misconduct, and perform remedial measures as a result." (Dkt. 129 at ¶ 99). Drawing all reasonable inferences in favor of Segerdahl, we find that Segerdahl has sufficiently alleged damage and loss for the purposes of CFAA. *See Maximum Independent Brokerage, LLC v. Smith*, 218 F.Supp.3d at 636-37 ("Assessing and repairing damage to computer files 'qualify as compensable because they are a cost of investigating or remedying damage to a computer, or a cost incurred because the computer's service was interrupted.'"); *Motorola*, 609 F.Supp.2d at 768; *cf. SKF USA, Inc. v. Bjerkness*, 636 F.Supp.2d 696 (N.D. Ill. 2009) (Pallmeyer, J.) (lost revenue was purely economic harm unrelated to the interruption of the computer system and did not qualify as "loss" under the CFAA). Therefore, the 12(b)(6) motion to dismiss Count II is denied.

*3. Counts IV-X: Preemption under Illinois Trade Secrets Act*

Dante challenges the various state law claims in Counts IV-X of the Amended Complaint, contending that these claims are preempted by the ITSA. Section 8(a) of ITSA states that it "is intended to displace conflicting tort, restitutionary, unfair competition, and other laws of this State providing civil remedies for misappropriation of a trade secret." 765 Ill. Comp. Stat. Ann. 1065/8. Therefore, ITSA preempts state common law claims "when they rest on the conduct that is said to misappropriate trade secrets." *Hecny Transp., Inc. v. Chu*, 430 F.3d 402, 404-05 (7th Cir. 2005). However, even "an assertion of a trade secret in a customer list does not wipe out claims of theft, fraud, and breach of the duty of loyalty that would be sound even if the customer list were a public record." *Id.* at 405. *See also Universal Imagine Print Group, LLC v. Mullen*, 2008 WL 62205, at *2 (holding that 12(b)(6) dismissal was not appropriate where a company's definition of confidential information was broader than the statute's definition of trade secrets, stating "if the information does not qualify as a trade secret, the availability of civil remedies designed to address unlawful disclosure or use would be unaffected by ITSA [preemption]."). Each of Segerdahl's state based claims will be addressed in turn.

*a. Counts IV and VI: Breach of Fiduciary Duty and Aiding and Abetting Breach of Fiduciary Duty*

Dante argues that Segerdahl's claims for breach of fiduciary duty and aiding and abetting breach of fiduciary duty are preempted by ITSA and, alternatively, fail to state a claim. In order to state a claim for breach of fiduciary duty, the complaint must allege that "a fiduciary duty exists, that the fiduciary duty was breached, and that such breach proximately caused the injury of which the plaintiff complains." *Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 782 (7th Cir. 2015) (*quoting Neade v. Portes*, 193 Ill.2d 433, N.E.2d 496, 502 (2000)). Furthermore, a claim for aiding and abetting a breach of fiduciary duty requires the plaintiff to allege that the party, whom the defendant aids, performed a wrongful act causing an injury, the defendant was aware of his role when he provided the assistance,

9

and the defendant knowingly and substantially assisted the violation. *See Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006); *see also Thornwood, Inc. v. Jenner & Block*, 344 Ill.App.3d 15, 799 N.E.2d 756, 767 (2003).

Segerdahl alleges that Dante served in a Director role at Segerdahl, acknowledged and signed the Segerdahl Confidentiality and Nondisclosure policy, along with the Segerdahl employee handbook, and violated these policies by using employee passwords to access Segerdahl email accounts. (Dkt. 129 at ¶¶ 36-39, 62). Segerdahl further alleges that Dante assisted Anthony Ferruzza by assisting in the removal of the hard drive from Ferruzza's Segerdahl-owned laptop computer (*Id.* at ¶ 63) and by copying information from Segerdahl email accounts and sending them to Ferruzza's personal email account. (*Id.* at ¶ 123-127). This Court finds that these claims are adequately stated and are not preempted by ITSA because the claims are not solely dependent on the misappropriation of trade secrets.

*b. Count V: Tortious Interference with Prospective Economic Advantage*

Dante argues that this Court should dismiss Count V because there are no allegations supporting the claim directed at Dante rather than all the individual defendants generally. Segerdahl asserts that Dante and other individual defendants engaged in tortious interference with prospective economic advantage, by obtaining knowledge of Segerdahl's customer relationships through their employment and providing that information to American Litho to "hinder, impair, and appropriate Segerdahl's business." (Dkt. 129 at ¶ 119). Segerdahl's position seems to be that because it has also alleged that Dante conspired with the other defendants, their conduct is attributable to him.

To state a claim for tortious interference with prospective economic advantage under Illinois law, a plaintiff must allege "(1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damages to

the plaintiff resulting from the defendant's interference." *Foster v. Principal Life Ins. Co.,* 806 F.3d 967 (7th Cir. 2015) (*quoting Anderson v. Vanden Dorpel*, 172 Ill.2d 399, 667 N.E.2d 1296, 1299 (1996)).

Here, there are no factual allegations beyond Dante providing some confidential information to Ferruzza to support this claim. It is undisputed that Dante is not employed by defendant American Litho. All of the allegations supporting this claim apply to the other individual defendants. Dante also argues that this claim is preempted by ITSA, however, this Court does not reach that question where there are no allegations to show that Dante provided any knowledge of customer relationships to American Litho or otherwise induced a breach of any expectancy. *Cf. Dames & Moore v. Baxter & Woodman, Inc.*, 21 F.Supp. 2d 817, 823 (N.D. Ill. 1998) (Gettleman, J.) (court upheld claims for tortious interference where plaintiff also alleged that defendants solicited plaintiff's employees and encouraged plaintiff's customers to terminate relationships with plaintiff). This Court therefore grants Dante's motion to dismiss this Count without prejudice.

 *c. Count VII: Conversion*

Dante argues that Segerdahl raises no allegations that he took anything from Segardahl, except the copied emails and, thus, it fails to state a claim for conversion and is preempted under ITSA. Under Illinois law, a claim for conversion requires Segerdahl to allege that "(1) [it] has a right to the property; (2) [it] has an absolute and unconditional right to the immediate possession of the property; (3) [it] made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." *Loman v. Freeman*, 229 Ill.2d 104, 321 Ill. Dec. 724, 890 N.E.2d 446, 461 (2008) (internal quotation marks omitted); *see also Van Diest Supply Co. v. Shelby Cnty. State Bank*, 425 F.3d 437, 439 (7th Cir.2005) (same). There are no allegations here that Dante removed and assumed control of any tangible property or that the confidential information had or could have a physical manifestation. As a result, this Court views the conversion claim as a restatement of the misappropriation of trade secrets claim and, thus, it is

11

preempted by ITSA. *See Am. Ctr. for Excellence in Surgical Assisting Inc. v. Cmty. Coll. Dist. 502*, 190 F.Supp.3d 812, 825 (N.D. Ill. 2016) (Feinerman, J.) (finding preemption of conversion claim by ITSA where the allegedly purloined proprietary information was not alleged to have any tangible form); *AutoMed Tech, Inc. v. Eller*, 160 F.Supp.2d 915, 922 (N.D. Ill. 2001) (Moran, J.) (dismissing the conversion claim because it was based solely on defendants' unauthorized control of plaintiff's proprietary software and design plans).

*d. Count VIII: Unfair Competition*

Dante does not challenge the sufficiency of Segerdahl's pleading of this claim, but only argues that it is preempted by ITSA. "In Illinois, the common law tort of unfair competition encompasses a 'broad spectrum of law' and it is difficult to determine exactly what elements are required in order to prove such a claim." *Integrated Genomics, Inc. v. Kyrpides*, No. 06 C 6706, 2008 WL 630605, at *13 (N.D. Ill. Mar. 4, 2008) (citing *Zenith Elec. Corp. v. Exzec, Inc.,* 1997 WL 223067, at *6 (N.D. Ill. March 27, 1997) (adopting the report and recommendation of Magistrate Judge Lefkow)); *see also SKF USA, Inc.*, 636 F.Supp.2d at 718. The claim often arises from alleged interference with third parties, but may be pleaded along with tortious interference with prospective economic advantage. *Integrated Genomics, Inc.*, 2008 WL 630605, at *13 (citing *Gorgonz Group, Inc. v. Gray Matter Holdings, LLC,* 2001 WL 103406, at *4 (N.D. Ill. Jan.30, 2001)).

Here, Segerdahl's allegations on this claim do not rely solely on the alleged misappropriation of confidential information or trade secrets, but assert based on a theory of conspiracy to benefit American Litho and that each of the individual defendants has misappropriated Segerdahl's labors and expenditures to benefit themselves. *See* Dkt. 129 at ¶¶ 138-141. These claims may or may not directly relate to the substance of the trade secret alleged in Segerdahl's ITSA claim, but nevertheless survive the pleading stage. *See U.S. Gypsum Co. v. LaFarge N. Am. Inc.*, 508 F.Supp.2d 601, 638 (N.D. Ill. 2007) (Hart, J.) (the court refused to dismiss as preempted any "specific aspect" of an unfair

12

competition claim based on misappropriation of confidential and proprietary information, but urging plaintiff to narrow down claims and "carefully consider which claims it will continue to pursue."). Since Dante does not challenge the legal sufficiency of the pleading this Court finds that Count VIII survives and is not preempted by ITSA.

   *e. Count IX: Civil Conspiracy*

Segerdahl alleges that the Individual Defendants engaged in a civil conspiracy against them. To succeed in a cause of action for civil conspiracy in Illinois, the plaintiff must allege facts "showing both (1) an agreement to accomplish such goal and (2) a tortious act committed in furtherance of that agreement." *Independent Trust Corp. v. Stewart Information Svcs. Corp.*, 665 F.3d 930, 939 (7th Cir. 2012); *see also Adcock v. Brakegate Ltd.*, 164 Ill.2d 54, 645 N.E.2d 888, 894 (1994) ("civil conspiracy, in Illinois, is defined as 'a combination of two or more persons for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means.'"). However, where a conspiracy claim is in conjunction with the misappropriation of trade secrets, the conspiracy claim is preempted. *See Automed Tech, Inc.*, 160 F.Supp.2d at 922. (dismissing claims of conspiracy as preempted based on a plan to steal confidential information, but not dismissing a claim of conspiracy based on a plan to sabotage former employer's customer relations); *see also Thomas & Betts Corp. v. Panduit Corp.*, 108 F.Supp.2d 968, 975 (N.D. Ill. 2000) (Moran, J.) (the court dismissed conspiracy claims that merely "restate[d]" ITSA claims and added "no new facts or parties").

Here, Segerdahl's complaint alleges that "Individual Defendants and American Litho knowingly and voluntarily entered into a scheme and agreement to engage in a combination of unlawful acts and misconduct including, without limitation…the Individual Defendants violated the CFAA, as set forth in Count II." (Dkt. 129 at ¶ 143). Segerdahl's allegations are unclear as to whether Dante engaged or planned to engage in unlawful acts not in conjunction with the misuse of

13

the trade secrets. Since Segerdahl has not alleged facts suggesting otherwise, the civil conspiracy claim is deemed preempted by the ITSA and therefore dismissed.

*f. Count X: Unjust Enrichment*

Dante argues that Count X must be dismissed because it is preempted by ITSA. Segerdahl alleges that the "misconduct of the Individual Defendants and American Litho, has enabled and will enable them to compete unfairly against Segerdahl." (Dkt. 129 at ¶ 148). For an unjust enrichment claim, "a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that the defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Cleary v. Philip Morris Inc.*, 656 F.3d 511 (7th Cir. 2011); *see also HIP Health Care Svcs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill.2d 145, 545 N.E.2d 672, 679 (1989). While Segerdahl contends that the claim is not preempted because it is not dependent on trade secrets, there are no facts to suggest what other conduct to which Segerdahl is referring. *See Spitz v. Proven Winners North America, LLC*, 759 F.3d 724 (7th Cir. 2014) (holding that claims under unjust enrichment and *quantum meruit* were displaced under ITSA); *see also Pope v. Alberto-Culver Co.,* 296 Ill.App.3d 512, 694 N.E.2d 615, 619 (1998). Therefore, Segerdahl cannot proceed with a claim of unjust enrichment because it is preempted by ITSA.

*4. Counts IV-X: Subject Matter Jurisidiction*

Dante also requests this Court decline supplemental jurisdiction over the state law claims. Since this Court has concluded that, at minimum, Segerdahl's CFAA claim in Count II survives dismissal, the Court will continue to exercise supplemental jurisdiction over all remaining state claims. 28 U.S.C. § 1367.

**Conclusion**

Based on the foregoing, this Court grants in part and denies in part defendant Vince Dante's motion to dismiss [146]. The motion is denied on Counts II, IV, VI, and VIII. The motion is granted on Counts I, III, VII, IX, and X without prejudice.

IT IS SO ORDERED.
    ENTERED:

Dated: February 10, 2018

                                             SHARON JOHNSON COLEMAN
                                             United States District Judge