# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| THE SEGERDAHL CORP. d/b/a SG 360°, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 17-cv-3015 |
| v. ) | |
| ) | Judge Sharon Johnson Coleman |
| ANTHONY FERRUZZA, MICHAEL ) | |
| FERRUZZA, DANIELLA TUCCI, ) | |
| CHRISTOPHER KNOLL, ERICA KNOLL, ) | |
| EUGENE "CORKY" CZECH, VINCE DANTE, ) | |
| AMERICAN LITHO, INC.; and ) | |
| WORLD VISUAL GROUP, LLC, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, The Segerdahl Corp. d/b/a SG360º ("Segerdahl"), filed a Second Amended Complaint against former employees Anthony Ferruzza, Michael Ferruzza, Daniella Tucci, Christopher Knoll, Erica Knoll, Eugene "Corky" Czech, American Litho, Inc., (American Litho) and World Visual Group, LLC alleging violations of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et. seq.*, the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 *et seq.*, the Illinois Trade Secrets Act ("ITSA"), 765 Ill.Comp.Stat. 1065/1 *et seq.*, breach of fiduciary duty, tortious interference with prospective economic advantage, aiding and abetting breach of fiduciary duty, conversion, unfair competition, civil conspiracy, unjust enrichment, and negligent spoliation of evidence.

Currently before the Court is Anthony Ferruzza, Michael Ferruzza, Daniella Tucci, Christopher Knoll, Erica Knoll and Eugene Czech (collectively "Individual Defendants"') Motion to

1

Dismiss [323] Segerdahl's Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons explained below, the motion is granted in part and denied in part.

**Background**

The following facts are summarized from the Second Amended Complaint and are taken as true for the purpose of this motion. Segerdahl is a commercial printing and marketing company. The Individual Defendants were employees of Segerdahl in various capacities, but all resigned between January 31, 2017 and February 2, 2017 to join American Litho, a competitor in the commercial printing and direct marketing industries.

Segerdahl alleges the Individual Defendants used their work computers to copy Segerdahl documents onto USB storage devices, sent Segerdahl documents to their personal email accounts, accessed third-party storage services such as DropBox and Google Drive, printed documents and confidential information, and deleted files from their work computers.

Segerdahl asserts that, six months before the Individual Defendants resigned, Anthony Ferruzza solicited those defendants to join American Litho and conspired to compete against Segerdahl by taking its customers to American Litho. Segerdahl states that Anthony Ferruzza used his work computer to access and print numerous documents and files and used a storage device to duplicate all the files that were on his work computer. These documents included files related to Segerdahl's 2017 budget, press schedules, operating procedures, operational initiatives, and customer job estimates. Segerdahl also asserts that Anthony Ferruzza deleted all his user-created documents and emptied the "Trash" folder on his computer on the last day of his employment with Segerdahl.

The day after she turned in her resignation letter on February 1, 2017, Daniella Tucci connected two USB storage devices to her computer and accessed files relating to customer high-resolution images, print ready files, and billing information. Christopher Knoll connected a USB device to his work computer from February 6 through February 10 and "accessed and interacted

with numerous files," including contact information for over 300 Segerdahl employees, organization charts, and billing data. Dkt. 292 ¶ 114-15. Further, Knoll sent approximately 4,500 documents from his Segerdahl email account to his personal email account.

Segerdahl alleges that Michael Ferruzza connected an external USB hard drive to his work computer and copied about 1,350 documents from the computer to the hard drive. The documents included standard operating files, proprietary software scripts, customer production files, and vendor contracts. Segerdahl alleges that this hard drive was later connected to an American Litho computer. Segerdahl also states that each of the Individual Defendants ran a "Disk Defragmenter executable file" on the computers of their current employer, American Litho, before turning the computers over in discovery. Dkt. 292 ¶ 319.

**Legal Standard**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint, not the merits of the allegations. To overcome a motion to dismiss, a complaint must contain sufficient factual allegations to state a claim for relief that is plausible on its face, *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), and raises the right to relief above a speculative level, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). When ruling on a motion to dismiss, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 830 (7th Cir. 2012).

**Discussion**

The Individual Defendants are seeking to dismiss the Second Amended Complaint in its entirety.[1] The Court will address each argument in turn.

---

[1] Although the Individual Defendants submitted one motion [323], each defendant has a separate memorandum in support of the motion. There is much overlap between the memoranda, but the Court will specify when distinguishable arguments are made by specific defendants.

3

*1. Counts I and III: Defend Trade Secrets Act and Illinois Trade Secret Act*

The Individual Defendants argue that the Court should dismiss Segerdahl's trade secret misappropriation allegations for failure to state a claim. As a preliminary matter, the motion to dismiss the DTSA and ITSA claims against Eugene Czech and Erica Knoll is granted. Although Segerdahl asserts violations of DTSA and ITSA by "Individual Defendants," the Second Amended Complaint does not include allegations against Czech or Erica Knoll as it relates to any trade secret misappropriation. Accordingly, the Court need only analyze the DTSA and ITSA claims pertaining to Daniella Tucci, Anthony Ferruzza, Christopher Knoll, and Michael Ferruzza.

DTSA creates a private cause of action in favor of the "owner of a trade secret that is misappropriated…if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). Under the DTSA, the term "trade secret" is defined as:

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—
>
> (A) the owner thereof has taken reasonable measures to keep such information secret; and
>
> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information;

18 U.S.C. § 1839(3). For the purposes of this Act, "misappropriation" is either: "(A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" or "(B) disclosure or use of a trade secret of another without express or implied consent" under certain conditions. 18 U.S.C. § 1839(5).

To state a claim under ITSA, a plaintiff must demonstrate (1) the trade secret's existence, (2) misappropriation, and (3) damages. *See Covenant Aviation Security, LLC v. Berry*, 15 F. Supp. 3d 813,

818 (N. D. Ill. 2014) (Lefkow, J.); *Liebert Corp. v. Mazur*, 827 N.E. 2d 909, 925, 357 Ill. App. 3d 265, (2005). ITSA defines "trade secret" as:

> [I]nformation, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that:
>
> (1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and
>
> (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.

765 Ill. Comp. Stat. Ann. 1065/2(d). The Act's statutory requirements focus on the secrecy of the information sought to be protected. *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 723 (7th Cir. 2003); *Mangren Research & Dev. Corp. Nat'l Chem. Co., Inc.*, 87 F.3d 937, 942 (7th Cir. 1996).

Segerdahl alleges that Anthony Ferruzza used a storage device to access confidential information like the 2017 budget, operational initiatives, and customer job estimates. Daniella Tucci, according to Segerdahl, accessed files relating to resolution images and customer billing information. Christopher Knoll is stated to have sent thousands of documents to his personal email including contact lists, organizational charts, and billing data. Lastly, Segerdahl alleges that Michael Ferruzza copied documents from his computer including vendor contracts, production files, and operating files. The data Segerdahl alleges were appropriated have trade secret protection. *See SKF USA, Inc. v. Bjerkness*, 636 F. Supp. 2d 696, 712 (N. D. Ill. 2009) (Pallmeyer, J.) ("[K]nowing the prices offered by a competitor to a specific customer for a specific set of services certainly would enable a competitor to make a more attractive bid in an attempt to displace the current provider").

The Individual Defendants argue that Segerdahl has failed to specify the alleged misappropriated trade secrets. However, trade secrets "need not be disclosed in detail in a

complaint alleging misappropriation for the simple reason that such a requirement would result in public disclosure of the purported trade secret." *Covenant Aviation Security, LLC*, 15 F. Supp. 3d at 818 (internal quotation omitted). The information Segerdahl alleges to be misappropriated fit squarely within ITSA's definition of trade secrets. *See* 765 Ill. Comp. Stat. Ann. 1065/2(d). Segerdahl, moreover, also explains the efforts to maintain this information's secrecy with actions like: conducting annual security training for employees to maintain secrecy, controlling access to the facilities, keeping the information on password protected computers, and disclosing the information on a need to know basis. Dkt. 192 ¶ 31-32. Thus, the motion to dismiss the DTSA and ITSA claims is denied as to Christopher Knoll, Daniella Tucci, Anthony Ferruzza, and Michael Ferruzza. As stated earlier, the motion is granted as to Erica Knoll and Eugene Czech.

*2. Count II: Computer Fraud and Abuse Act*

The Individual Defendants argue that Segerdahl fails to allege it suffered damage or loss under the CFAA. The CFAA provides that "[a]ny person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator…" 18 U.S.C. § 1030(g). Under the CFAA, a plaintiff must allege "(1) damage or loss; (2) caused by (3) a violation of one of the substantive provisions set forth in § 1030(a), and (4) conduct involving one of the factors of harm set forth in § 1030(c)(4)(A)(i)(I)-(VI)." *See Motorola, Inc. v. Lemko Corp*, 609 F. Supp. 2d 760, 765 (N.D. Ill. 2009) (Kennelly, J). For violations of section 1030(a)(2)(C) and 1030(a)(4) either damage *or* loss needs to be alleged, not both. *See id.* at 766; 18 U.S.C. § 1030(a)(2)(C), (a)(4). A violation of section 1030(a)(5)(C) requires both damage *and* loss. *Motorola*, 609 F. Supp. 2d at 766; 18 U.S.C. § 1030(a)(5)(C).

The statutory definition for "damage" is "any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8). The Seventh Circuit held that the

statutory requirement of damage is satisfied when the defendant's acts cause the data or program's integrity to be impaired. *Intl. Airport Centers, LLC v. Citrin*, 440 F.3d 418, 419 (7th Cir. 2006); *see also Fidlar Technologies v. LPS Real Estate Data Solutions, Inc.*, 810 F.3d 1075, 1084 (7th Cir. 2016) (finding that "causes damage" could be as destructive as using a virus on a computer, or less invasive conduct such as "flooding an email account.")

The term loss means "any reasonable costs to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11). Courts in this district have found that to adequately plead a loss under CFAA, it is the plaintiff's burden to allege that a defendant's action caused losses over $5,000 in a one-year period, relating to damages and security assessments. *See Patrick Patterson Custom Homes, Inc. v. Bach,* 586 F. Supp. 2d 1026, 1036 (N. D. Ill. 2008) (Denlow, M.J.) (finding that expenses related to assess and repair computer files are compensable "because they are a 'cost of investigating or remedying damage to a computer, or cost incurred because the computer's service was interrupted.'") (internal quotes omitted).

The Individual Defendants argue that Segerdahl did not allege that it incurred $5,000 in damages in a one-year period as required by the CFAA. Segerdahl alleges that it incurred loss in excess of $5,000 under 1030(a)(2)(C) from the forensic investigation of each of the Individual Defendants' unauthorized access of information from its computers and network. As stated above, Segerdahl specifically differentiates each defendant's conduct as it relates to the unauthorized access of Segerdahl's information. Segerdahl also contends that the Individual Defendants violated § 1030(a)(4) by obtaining accelerated vesting of their stock options as a result of unauthorized access to Segerdahl's Chairman's emails concerning a pending acquisition.

7

Segerdahl, further, alleges that it incurred $5,000 in damage and loss under § 1030(a)(5)(C) from: Anthony Ferruzza's deleting the documents off his computer as well as destroying his computer, Michael Ferruzza's deletion of all user-created documents on his computer, and the Individual Defendants' conspiring to access their employer-issued computers to copy and destroy documents prior to resigning. Drawing all reasonable inferences in Segerdahl's favor, the Court finds that Segerdahl has sufficiently alleged damage and loss against the Individual Defendants under the CFAA. *See Maximum Independent Brokerage*, 218 F.Supp.3d at 636-37 ("Assessing and repairing damage to computer files 'qualify as compensable because they are a cost of investigating or remedying damage to a computer, or a cost incurred because the computer's service was interrupted.'"); *Motorola*, 609 F. Supp. 2d at 768; *cf. SKF USA, Inc.*, 636 F. Supp. 2d at 721 (finding that the alleged lost revenue was purely economic harm unrelated to the interruption of the computer system and did not qualify as "loss" under the CFAA). The motion to dismiss Count II is denied.

*3. Counts IV and VI: Breach of Fiduciary Duty and Aiding and Abetting Breach of Fiduciary Duty*

Only Erica Knoll, Daniella Tucci, and Eugene Czech challenge Segerdal's breach of fiduciary duty and aiding and abetting the breach of fiduciary duty claims. These defendants argue that Segerdahl fails to point to specific allegations establishing this claim with respect to each defendant. Defendants also argue that these claims are preempted by ITSA.

To state a claim for breach of fiduciary duty, the complaint must allege that a fiduciary duty exists, that the fiduciary duty was breached, and that the breach proximately caused the plaintiff's injury. *Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 782 (7th Cir. 2015); *Neade v. Portes*, 739 N.E.2d 496, 502, 193 Ill.2d 433, (2000). Furthermore, a claim for aiding and abetting a breach of fiduciary duty requires the plaintiff to allege that the party whom the defendant aids performed a wrongful act causing an injury, the defendant was aware of his role when he provided the assistance, and the defendant knowingly and substantially assisted the violation. *See Hefferman v. Bass*, 467 F.3d 596, 601

8

(7th Cir. 2006); *see also Thornwood, Inc. v. Jenner & Block*, 799 N.E.2d 756, 767, 344 Ill.App.3d 15, (2003).

The Court finds that these claims are not preempted by ITSA because they are not solely dependent on the misappropriation of trade secrets. However, these claims are improperly pled. Each defendant must be "put on notice as to the scope of the claims against [him or her]." *Chamberlain Group, Inc. v. Techtronic Industries North America, Inc.*, No 16-cv-06113, 2017 WL 42690005 * 3 (N. D. Ill. Sept. 26, 2017) (Tharp, J.) (citing *Brooks v. Ross*, 574, 582 (7th Cir. 2009)). Regarding Erica Knoll and Eugene Czech, Segerdahl fails to make any specific allegations relating to a breach of fiduciary duties aside from applying to American Litho for a job. Obviously, applying for a job with an employer's competitor is not a breach of fiduciary duty. *See Instant Technology, LLC v. DeFazio*, 40 Supp. 3d 989, 1017 (N. D. Ill. 2014) (Holderman, J.) (finding that an employee could form and prepare a competing business without a breach of fiduciary duty "as long as they did not actually compete with [their employer]") (citation omitted)). On the other hand, Segerdahl alleges that Daniella Tucci used a USB storage device to copy over 1,000 documents from the employer-issued computer. At the pleading stage, Segerdahl has made a sufficient allegation that Tucci breached a fiduciary duty and aided and abetted a breach of fiduciary duty. Accordingly, the motion to dismiss Counts IV and VI as it relates to Erica Knoll and Eugene Czech is granted. The motion is denied as to Daniella Tucci.

*4. Count V: Tortious Interference with Prospective Economic Advantage*

The Individual Defendants argue that Count V should be dismissed for failure to allege a disrupted business relationship between Segerdahl and a third party. To state a claim for tortious interference with prospective economic advantage under Illinois law, a plaintiff must allege "(1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or

9

caused a breach or termination of the expectancy, and (4) damages to the plaintiff resulting from the defendant's interference." *Foster v. Principal Life Ins. Co.,* 806 F.3d 967, 971 (7th Cir. 2015) (*quoting Anderson v. Vanden Dorpel*, 667 N.E.2d 1296, 1299, 172 Ill.2d 399. (1996)).

Segerdahl alleges that the Individual Defendants tortuously interfered with its customer and employee relationships. However, except for Anthony Ferruzza, the Second Amended Complaint does not contain specific allegations of tortious interference against any of the Individual Defendants. Segerdahl alleges that American Litho (who is not part of the present motion) and the "Individual Defendants" tortuously interfered with Segerdahl's customer and employee relationships. Segerdahl also states that Anthony Ferruzza, as Senior Vice President and General Manager, reached out to Segerdahl employees and made plans to influence Segerdahl employees to resign and work for American Litho. There are no factual allegations against any of the other Individual Defendants that can make out a claim for tortious interference with prospective economic advantage. Segerdahl makes no substantive argument in its response to the Individual Defendants' motion. Therefore, this Count must be dismissed for improper group pleading as it relates to Daniella Tucci, Eugene Czech, Michael Ferruzza, Christopher Knoll, and Erica Knoll. *Opus Fund Services (USA) LLC v. Theorem Fund Services, LLC*, No. 17-cv-923, 2018 WL 1156246 *2 (N.D. Ill. Mar. 5, 2018) (Coleman, J.) (dismissing complaint for improper group pleading based on collective responsibility instead of specific allegation against each individual defendant) (citing *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013)). Defendant's motion to dismiss Count V against Anthony Ferruzza is denied. Count V against the remaining Individual Defendants is dismissed.

*5. Count VII: Conversion*

The Individual Defendants argue that Segerdahl's conversion claim should be dismissed as preempted by ITSA. Under Illinois law, a claim for conversion requires Segerdahl to allege that it

10

has: (1) a right to the property; (2) an absolute right to the property's immediate possession; (3) made a demand for possession of the property; and (4) the defendant wrongfully assumed control or ownership over the property. *Loman v. Freeman*, 890 N.E.2d 446, 461, 229 Ill.2d 104 (2008) (internal quotation marks omitted); *Van Diest Supply Co. v. Shelby Cnty. State Bank*, 425 F.3d 437, 439 (7th Cir. 2005).

Segerdahl alleges that Anthony Ferruzza is in possession of an "iMac clone hard drive" storage device that served as a back up hard drive to his computer. Dkt. 292 at ¶¶ 57-59. Accordingly, Segerdahl's conversion claim makes an adequate claim against Anthony Ferruzza. Regarding the remaining Individual Defendants, there are no allegations here that the Individual Defendants removed and assumed control of any tangible property or that the confidential information had or could have a physical manifestation. As a result, except for Anthony Ferruzza, this Court views the conversion claim as a restatement of the misappropriation of trade secrets claim and, thus, it is preempted by ITSA. *See Am. Ctr. for Excellence in Surgical Assisting Inc. v. Cmty. Coll. Dist. 502*, 190 F.Supp.3d 812, 825 (N.D. Ill. 2016) (Feinerman, J.) (finding preemption of conversion claim by ITSA where the allegedly stolen proprietary information was not alleged to have any tangible form); *AutoMed Tech, Inc. v. Eller*, 160 F. Supp. 2d 915, 922 (N.D. Ill. 2001) (Moran, J.) (dismissing the conversion claim because it was based solely on defendants' unauthorized control of plaintiff's proprietary software and design plans).

*6. Count VIII: Unfair Competition*

The Individual Defendants argue that Segerdahl's unfair competition claim should be dismissed for failure to state a claim. "In Illinois, the common law tort of unfair competition encompasses a 'broad spectrum of law' and it is difficult to determine exactly what elements are required in order to prove such a claim." *Integrated Genomics, Inc. v. Kyrpides*, No. 06 C 6706, 2008 WL 630605, at *13 (N.D. Ill. Mar. 4, 2008) (Lefkow, J.) (citing *Zenith Elec. Corp. v. Exzec, Inc.,* 93 C

5041, 1997 WL 223067, at *6 (N.D. Ill. March 27, 1997) (Manning, J.); *see also SKF USA, Inc.*, 636 F. Supp. 2d at 718. The claim often arises from alleged interference with third parties but may be pleaded along with tortious interference with prospective economic advantage. *Integrated Genomics, Inc.*, 2008 WL 630605, at *13 (internal citation omitted).

Apart from Anthony Ferruzza, Count VII is dismissed against the Individual Defendants for improper group pleading. Segerdahl makes several claims of unfair competition against the Individual Defendants, including allegations that they committed unfair competition by encouraging customers of Segerdahl to purchase products and services from other companies and encouraging Segerdahl's suppliers to alter their business relationship with Segerdahl. Dkt. ¶ 302. However, other than Anthony Ferruzza, there are no factual allegations in the Second Amended Complaint directed at any of the Individual Defendants specifically. Therefore, this Count as it relates to Daniella Tucci, Eugene Czech, Michael Ferruzza, Christopher Knoll, and Erica Knoll must be dismissed for improper group pleading. *See Opus Fund Services (USA) LLC*, 2018 WL 1156246 at *2. The motion to dismiss Count VIII against Anthony Ferruzza is denied.

*7. Count IX Civil Conspiracy*

The Individual Defendants argue that Count IX should be dismissed for failure to state a claim. To succeed in a cause of action for civil conspiracy in Illinois, the plaintiff must allege facts "showing both (1) an agreement to accomplish such goal and (2) a tortious act committed in furtherance of that agreement." *Independent Trust Corp. v. Stewart Information Svcs. Corp.*, 665 F.3d 930, 939 (7th Cir. 2012); *see also Adcock v. Brakegate Ltd.*, 645 N.E.2d 888, 894, 164 Ill.2d 54, (1994) ("civil conspiracy, in Illinois, is defined as 'a combination of two or more persons for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means.'"). However, where a conspiracy claim is in conjunction with the misappropriation of trade secrets, the conspiracy claim is preempted. *See Automed Tech, Inc.*, 160 F. Supp. 2d at 922. (dismissing

claims of conspiracy as preempted based on a plan to steal confidential information, but not dismissing a claim of conspiracy based on a plan to sabotage former employer's customer relations); *see also Thomas & Betts Corp. v. Panduit Corp.*, 108 F. Supp. 2d 968, 975 (N.D. Ill. 2000) (Moran, J.) (dismissing the conspiracy claims that merely "restate[d]" ITSA claims and added "no new facts or parties").

In the Second Amended Complaint, Segerdahl alleges that the defendants engaged in a civil conspiracy to commit several unlawful acts including violating the CFAA, tortious interference with a prospective economic advantage, and breach of fiduciary duty. Because Segerdahl alleges violations that are not in conjunction with the misuse of trade secrets, the civil conspiracy claim is not preempted by ITSA and survives the pleading stage. The motion to dismiss Count IX is denied.

*8. Count X: Unjust Enrichment*

The Individual Defendants argue that Count X must be dismissed because it is preempted by ITSA. To state a claim for unjust enrichment, "a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that the defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Cleary v. Philip Morris Inc.*, 656 F.3d 511 (7th Cir. 2011); *see also HIP Health Care Svcs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679, 131 Ill.2d 145, (1989).

Segerdahl alleges that the Individual Defendants' conduct will enable them to unfairly compete against it. Dkt. 292 ¶ 311. There are, however, no facts to suggest what other conduct Segerdahl is referring in addition to the misappropriation of trade secrets. *See Spitz v. Proven Winners North America, LLC*, 759 F.3d 724 (7th Cir. 2014) (holding that claims under unjust enrichment and *quantum meruit* were displaced under ITSA); *see also Pope v. Alberto-Culver Co.,* 694 N.E.2d 615, 619, 296 Ill.App.3d 512 (1998). Therefore, Segerdahl cannot proceed with a claim of unjust enrichment because it is preempted by ITSA. The motion to dismiss Count X is granted.

13

*Count XI: Negligent Spoilation*

The Individual Defendants argue that this Court should dismiss Segerdahl's negligent spoliation claim. There is no general duty to preserve evidence. *Boyd v. Travelers Ins. Co.*, 652 N.E.2d 267, 269-70,166 Ill.2d 188, 195, 209 Ill. Dec. 727 (1995). Illinois courts generally recognize a duty to preserve evidence where there (1) is an agreement, contract, statute, special circumstances, or voluntary "assumption," and (2) a reasonable person should have foreseen that the evidence at issue was relevant and material to potential litigation. *Olivarius v. Tharaldson Property Management, Inc.*, 695 F. Supp. 2d 824, 829 (N. D. Ill. 2010) (citing *Dardeen v. Kuehling*, 821 N.E. 2d 227, 231, 213 Ill. 2d 329 (2004)). To plead causation in a negligent spoliation of evidence claim, the plaintiff "must allege sufficient facts to support a claim that the loss or destruction of the evidence *caused the plaintiff to be unable to prove* an underlying lawsuit." *Boyd*, 652 N.E.2d at 271. In a footnote, the court explained:

> A plaintiff must demonstrate, however, that but for the defendant's loss or destruction of the evidence, the plaintiff had a reasonable probability of succeeding in the underlying suit. In other words, if the plaintiff could not prevail in the underlying action even with the lost or destroyed evidence, then the defendant's conduct is not the cause of the loss of the lawsuit. This requirement prevents a plaintiff from recovering where it can be shown that the underlying action was meritless.

*Id.* at 271 n.2.

Segerdahl alleges that it served the Individual Defendants with an evidence preservation letter no later than February 20, 2017. Segerdahl further alleges that the Individual Defendants each failed to turn over USB's that were connected to their American Litho computers as well as running a program on their American Litho computers that deleted all the files on those computers. While the Individual Defendants dispute whether they were responsible for the computer program running, the Court finds that Segerdahl has adequately pled the negligent spoliation claim. The motion to dismiss Count XI is denied.

**Conclusion**.

For the reasons stated above, the Individual Defendants' motion to dismiss [323] Segerdahl's Second Amended Complaint [292] is granted in part and denied in part. Counts I, III, IV, and VI are dismissed against Eugene Czech and Erica Knoll, Counts V and VII are dismissed against Erica Knoll, Christopher Knoll, Daniella Tucci, Michael Ferruzza, and Eugene Czech, Count VIII is dismissed against Erica Knoll, Christopher Knoll, Daniella Tucci, Michael Ferruzza, and Eugene Czech, and Count X is dismissed. The Individual Defendants' motion is denied in all other respects.

IT IS SO ORDERED.

Date: January 2, 2019

Entered: _____

SHARON JOHNSON COLEMAN

United States District Court Judge