UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE SEGERDAHL CORP. d/b/a SG360°, <br><br> Plaintiffs, <br><br> v. <br><br> ANTHONY FERRUZZA ET AL., <br><br> Defendants. | Case No. 17-cv-3015 <br><br> Judge Martha M. Pacold |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Segerdahl Corp. has moved to exclude the testimony, opinions, and report of Matthew Scott, an expert witness for defendant American Litho, Inc. [588]. Segerdahl contends that Scott is unqualified and his opinions are unreliable. Segerdahl also seeks to preclude defendants Anthony Ferruzza, Michael Ferruzza, Daniella Tucci, Christopher Knoll, Erica Knoll, and Eugene Czech (together, "Individual Defendants") from relying upon Scott because they did not disclose him as an expert witness. As explained below, Segerdahl's motion is granted in part and denied in part.

**BACKGROUND**

Scott's report describes him as "an expert in commercial printing, having worked in the printing industry for over 40 years." [644-1] at 2.[1] Over that time, he has held a variety of different positions working in different industry segments and with different types of products. *Id.* at 2, 10–11. He served on the Board of Directors for the Association of Graphic Communications from 1998 to 2001, as the Treasurer for the Association for an unspecified period of time, and he was on the Board of Directors for the National Association of Printers and Lithographers from 1998 to 2000. *Id.* at 3, 11. Scott has also worked as an expert on print manufacturing in litigation and performs consulting work related to the printing business. *Id.*

In his expert report, Scott provides an overview of the printing industry. He observes that "[t]he printing industry is highly specialized and unique" and requires significant capital investment, resulting in "a limited number of companies with the

---

[1] Bracketed numbers refer to docket entries and are followed by page and / or paragraph numbers. Page numbers refer to the CM/ECF page number.

resources . . . to manufacture substantial print volume." *Id.* at 3. Scott asserts that "[p]rinting companies run the same or similar equipment and use the same processes, but are otherwise unique" and that "standard expertise . . . is developed, shaped, and shared through" the movement of individual workers "from company to company." *Id.* at 3–4; *see also id.* at 5 ("Top printing companies use the same techniques, equipment, suppliers, standards, paper, and subcontractors.").

According to Scott, printers "prepare a set of written procedures based on their knowledge of the process." *Id.* at 5. "As the standards are the same, so are the Standard Operating Procedures different printing companies use." *Id.*; *see also id.* ("SOP's are generally the same from printer to printer.").

Scott also states that "[m]ost customers maintain a 'go to' roster of qualified printers and" use "Master Supply agreements" with printers." *Id.* at 4. "Almost all Master Supply agreements contain 'work for hire' provisions, such that the customer owns all of the print company's work for that customer." *Id.*

Based upon his review of various documents, Scott reaches four general conclusions: (1) R.J. Reynolds "artwork, templates and forms are considered customer supplied information, [and] therefore owned by the customer." *Id.* at 8. (2) Quality Assurance forms "in use [by Segerdahl] are standard in nature, various forms of which are in use at larger printing companies. These forms are completely adequate for the purpose and are generally known in the industry." *Id.* (3) "The Segerdahl SOP's contain nothing commercially advantageous or unique. Similar, if not identical[,] SOP's can be found in every large print company." *Id.* And (4) "[b]lanks, partial, and incomplete templates contain little information helpful in determining their ownership or proprietary nature." *Id.*

After reviewing the briefs and Scott's report, the court held a *Daubert* hearing focused on the reliability of Scott's methodology. [714], [717], [722].

## LEGAL STANDARD

"Federal Rule of Evidence 702 and *Daubert* [*v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993),] govern the admissibility of expert testimony." *Timm v. Goodyear Dunlop Tires N. Am., Ltd.*, 932 F.3d 986, 993 (7th Cir. 2019). "Under this framework, a trial judge, as a gatekeeping matter, is responsible for ensuring that proposed expert testimony 'is not only relevant, but reliable.'" *Id.* (quoting *Daubert*, 509 U.S. at 589). "An expert's testimony qualifies as relevant under Rule 702 so long as it assists the jury in determining any fact at issue in the case." *Stuhlmacher v. Home Depot U.S.A., Inc.*, 774 F.3d 405, 409 (7th Cir. 2014).

The court "must engage in a three-step analysis before admitting expert testimony. It must determine whether the witness is qualified; whether the expert's methodology is scientifically reliable; and whether the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue."

2

*Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 780 (7th Cir. 2017) (internal quotation marks omitted). "The proponent of the expert bears the burden of demonstrating that the expert's testimony would satisfy the *Daubert* standard." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

## DISCUSSION

### I. Scott's Qualifications

Segerdahl first challenges Scott's qualifications. "For a witness to be considered an 'expert,' Rule 702 requires that person to be qualified as such 'by knowledge, skill, experience, training, or education.'" *Lewis*, 561 F.3d at 705 (quoting Fed. R. Evid. 702). "Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." *Gayton v. McCoy*, 593 F.3d 610, 616 (7th Cir. 2010) (internal quotation marks omitted). The court "must look at each of the conclusions [an expert] draws individually to see if he has the adequate education, skill, and training to reach them." *Id.* at 617; *see, e.g.*, *Hall v. Flannery*, 840 F.3d 922, 928–30 (7th Cir. 2016) (expert was qualified to offer some opinions but not others).

Here, Segerdahl lumps all of Scott's opinions together and asserts that he is unqualified to offer any opinions "on the business of large printers [like Segerdahl] because he has never worked for such a company." [589] at 7. American Litho responds that Scott need not have specialized experience with large printers and that having over forty years of experience in the printing industry is sufficient.

Scott is qualified to offer opinions about the printing industry. As recounted above, Scott has over forty years of experience holding a variety of roles across the industry and at companies he himself owns. [644-1] at 2–3, 10–11. Segerdahl does not challenge that Scott has significant experience and knowledge of the printing industry in general, but instead contends that he needs specific experience with large printers. Segerdahl, however, does not explain why Scott must have specific work experience with large printers and why the experience he does have is inadequate. *See Baugh v. Cuprum S.A. de C.V.*, 845 F.3d 838, 845 (7th Cir. 2017) (denying *Daubert* motion where movant "fail[ed] to explain *how* Dr. Vinson's . . . lack of experience within the ladder industry render[ed] him unqualified"); *In re Fluidmaster, Inc., Water Connector Components Prods. Liab. Litig.*, No. 14-cv-5696, 2017 WL 1196990, at *6 (N.D. Ill. Mar. 31, 2017) ("Plaintiffs fail to explain why the experience that Meek actually possesses is insufficient to qualify him to offer his opinions, and that failure dooms their *Daubert* challenge."). Regardless, courts generally "impose no requirement that an expert be a specialist in a given field," so the fact that Scott has not worked at a large printer "goes to the weight to be placed on [his] opinion[s], not [their] admissibility." *Hall*, 840 F.3d at 929 (internal quotation marks omitted). Scott's general experience in the printing industry is

sufficient to qualify him as an expert regarding the opinions he offers about what information, forms, procedures, and practices are commonly known or typical in the industry. *See Smith v. Union Pac. R.R.*, No. 11-cv-986, 2017 WL 2656583, at *4–5 (N.D. Ill. June 20, 2017) (vocational counselor was qualified to testify about plaintiff's ability to return to work even though lacked expertise on substance abuse and had not previously worked with locomotive engineers like plaintiff).

## II. Reliability Of Scott's Opinions

Segerdahl next argues that Scott's opinions are unreliable. To assess reliability, the court must "determine whether the expert is qualified in the relevant field and . . . examine the methodology the expert has used in reaching his conclusions." *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000). Reliability is "assessed case by case," although the non-exhaustive list of factors identified in *Daubert* and its progeny can be instructive.[2] *Timm*, 932 F.3d at 993. "Rule 702's reliability elements require the district judge to determine only that the expert is providing testimony that is based on a correct application of a reliable methodology and that the expert considered sufficient data to employ the methodology." *Gopalratnam*, 877 F.3d at 780 (emphasis omitted). "[T]he correct inquiry focuses not on 'the ultimate correctness of the expert's conclusions,' but rather on 'the soundness and care with which the expert arrived at her opinion.'" *Timm*, 932 F.3d at 993 (quoting *Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 431 (7th Cir. 2013)). Ultimately, to be reliable, an expert must "show that his conclusions were the fruit of a rigorous, objectively-verifiable approach—something more than mere speculation." *Id.* at 994. Even when an expert relies upon his experience, he "still need[s] to show how his experience or expertise led to his conclusions." *Varlen Corp. v. Liberty Mut. Ins. Co.*, 924 F.3d 456, 459 (7th Cir. 2019).

Here, Segerdahl contends that Scott's opinions that Segerdahl's SOPs, Quality Assurance process forms, and Press and Finishing Waste Worksheet are generally known in the industry lack any reliable basis. Separately, Segerdahl asserts that Scott's opinion about the ownership of R.J. Reynolds-related documents is an inadmissible and unsupported legal opinion.

---

[2] These factors include, for example, "(1) whether the proffered theory can be and has been tested; (2) whether the theory has been subjected to peer review; (3) whether the theory has been evaluated in light of potential rates of error; and (4) whether the theory has been accepted in the relevant scientific community." *Krik v. Exxon Mobil Corp.*, 870 F.3d 669, 674 (7th Cir. 2017) (quoting *Baugh v. Cuprum S.A. de C.V.*, 845 F.3d 838, 844 (7th Cir. 2017)).

4

### A. Opinions Regarding Segerdahl's SOPs, Quality Assurance Process Forms, and Waste Worksheet

Segerdahl asserts that four of Scott's opinions are unreliable: (1) that, based upon Scott's review, Scott "did not discovery any [Segerdahl SOPs] that were not readily available in any larger printing operation"; (2) that the SOPs "appear to be the same as generally available in the industry"; (3) that Segerdahl's Quality Assurance process forms are "in use at larger printing companies" and "generally known in the industry"; and (4) that Segerdahl's "Press and Finishing Waste Worksheet" uses "basic standard percentage formulations used throughout the industry." [644-1] at 7–8; *see* [589] at 9–12.

American Litho responds that experts such as Scott may testify based on their experience and that Scott's opinions "result from Scott's experience, his general opinions on and observations of the printing industry, and his comprehensive review and analysis of the 248 documents alleged to contain Segerdahl trade secrets in light of that experience." [644] at 11.

American Litho has shown that Scott's opinions are based on reliable principles, namely his experience. Scott may rely upon his experience to reach his conclusions, but he must "show how his experience or expertise led to his conclusions." *Varlen*, 924 F.3d at 459; Fed. R. Evid. 702 (2000 advisory committee notes). Scott's report does not cleanly connect his experience to his opinions. The report does not, for example, explain how he knows that Segerdahl's SOPs are "readily available in any larger printing operation," nor did he give specific reasons why he knew that the Quality Assurance forms were "generally known in the industry." [644-1] at 7–8.

However, Scott's testimony at the *Daubert* hearing filled in these gaps. Scott testified that he did not need to conduct surveys and research as to his conclusions because they were based on "knowledge and experience that [he] ha[s]." Further, Scott explained that he drew his conclusions based on conversations he has had with the CEOs and presidents of large printing companies from when he was on the board of the Association of Graphic Communications. As to the SOPs, Scott testified that he drew the conclusion that the SOPs he reviewed were the same as those generally available in the industry by comparing those reviewed to ones that Scott drafted at his own printing companies. Scott further explained that although he would have been unhappy had an employee taken SOPs when leaving one of Scott's companies, the SOPs would not have any value to a competitor because they would be the same in the competitor's shop. Scott similarly based his conclusion that the Quality Assurance forms were generally in use at larger printing companies on his experience as a consultant.

Experts may utilize their experience in a particular field as the basis for their opinions, not just surveys and methodological research. *See Kumho Tire Co. v.*

*Carmichael*, 526 U.S. 137, 147–48 (1999). Though the connection between Scott's experience and his ultimate opinions on Segerdahl's SOPs, Quality Assurance process forms, and Waste Worksheet may be thin, that connection can be attacked through "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" along similar lines as Segerdahl's questioning at the *Daubert* hearing. *Schultz*, 721 F.3d at 431 (quoting *Daubert*, 509 U.S. at 596). Scott's four opinions on these documents clear *Daubert*'s gatekeeping threshold and are thus admissible at this stage.

### B. Opinion Regarding R.J. Reynolds-Related Documents

Segerdahl next challenges Scott's opinion that R.J. Reynolds "artwork, templates and forms are considered customer supplied information, [and] therefore owned by the customer." [664-1] at 8. Segerdahl maintains that this is an impermissible legal opinion and, even if it was not a legal opinion, it is unreliable because Scott did not review Segerdahl's agreements with R.J. Reynolds, making his opinion pure speculation. American Litho argues that Scott is merely opining that, typically, these documents would be owned by R.J. Reynolds and not that the documents in Segerdahl's possession are R.J. Reynolds's property. Alternatively, American Litho argues that Scott is correct because Segerdahl's R.J. Reynolds-related documents are in fact owned by R.J. Reynolds and not Segerdahl.

Scott's opinion is inadmissible because it is an impermissible legal conclusion. Scott does not opine in his report that R.J. Reynolds-related work documents are typically owned by R.J. Reynolds; he concludes that the specific R.J. Reynolds documents that Segerdahl asserts are Segerdahl's trade secrets are owned by R.J. Reynolds. [644-1] at 6–8 (Scott stating that he reviewed Segerdahl's "RJR Templates" and concluding "[r]elative to the exhibits" that the "artwork, templates and forms" were "owned by the customer"). American Litho does not dispute that this is a legal conclusion on which Scott cannot opine. *See United States v. Sinclair*, 74 F.3d 753, 757 n.1 (7th Cir. 1996) ("Federal Rules of Evidence 702 and 704 prohibit experts from offering opinions about legal issues that will determine the outcome of a case. That is, they cannot testify about legal issues on which the judge will instruct the jury."). This holding does not, however, prevent Scott from testifying about the general custom in the printing industry, as Segerdahl's motion does not seek to exclude testimony on that topic.[3]

Because the court holds that Scott cannot testify as to whether R.J. Reynolds in fact owned the "artwork, templates, and forms," the court does not address whether Scott presented a reliable basis for this opinion.

---

[3] Because this category of testimony is not at issue, the court does not address its admissibility.

### III. The Individual Defendants' Reliance On Scott

Finally, Segerdahl seeks to preclude the Individual Defendants from relying upon Scott due to their alleged violation of Federal Rule of Civil Procedure 26(a)(2) by not disclosing that they intended to rely upon him as a witness. American Litho does not dispute that the Individual Defendants violated Rule 26(a)(2), and instead argues that it did not violate Rule 26(a)(2) and asserts that any party can rely upon Scott's opinions and testimony. [644] at 14–15. The Individual Defendants did not file a separate response and, instead, joined American Litho's opposition. [649].

Because neither American Litho nor the Individual Defendants refuted (or even addressed) Segerdahl's contention that the Individual Defendants violated Rule 26(a)(2), they have conceded it. *See 7241 W. 100th Place Corp. v. Vill. of Broadview*, No. 13 C 4336, 2014 WL 517961, at *3 (N.D. Ill. Feb. 6, 2014) (collecting cases); *Komal v. Arthur J. Gallagher & Co.*, 833 F. Supp. 2d 855, 863 (N.D. Ill. 2011) (same); *see also Varlen*, 924 F.3d at 460 ("[C]ourts do not have to scour the record or make a party's argument for it."). With respect to the arguments defendants did raise, whether American Litho did or did not violate Rule 26(a)(2) is not at issue, and American Litho does not explain how its compliance with the Rule—or the general principle that any party may rely upon the testimony of any witness—addresses whether the Individual Defendants violated the Rule or whether precluding the Individual Defendants from relying upon Scott is an appropriate sanction for such a violation.

Even if American Litho and the Individual Defendants had not waived their opposition on this issue, the Individual Defendants do appear to have violated Rule 26(a)(2). The Rule requires that "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A). Again, there is no dispute that the Individual Defendants did not disclose Scott as a witness they intended to use at trial. Thus, they appear to have violated Rule 26(a)(2).

It could be argued (but was not) that American Litho's disclosure of Scott somehow relieved the Individual Defendants of their obligation to do so under Rule 26(a)(2). Courts that have addressed this circumstance (where one defendant properly discloses an expert but another defendant does not and then relies upon that expert) are in agreement that this violates Rule 26(a)(2). *Stafford v. Carter*, No. 17-cv-00289, 2018 WL 4361639, at *2–3 (S.D. Ind. Sept. 13, 2018) ("Rule 26 does not create an implicit 'co-defendant' exception to the disclosure requirement."); *Smith v. Hrynkiw*, No. 05-CV-1759, 2008 WL 8700457, at *11 (N.D. Ala. Apr. 28, 2008) (rejecting argument that it was "appropriate for [one defendant] to piggyback onto" a co-defendant's disclosure of an expert because "Rule 26(a)(2) obligates 'a party' to disclose, not 'a side'"); *see also Kaepplinger v. Michelotti*, No. 17 CV 5847, 2022 WL 1404832, at *5–6 (N.D. Ill. May 4, 2022) (holding that defendants violated Rule 26(a)(2) by not disclosing expert that had already been disclosed by former co-

defendant, even though defendants included a footnote "adopting all of their co-defendants' disclosures"); *Ill. Comput. Rsch, LLC v. Harpo Prods., Inc.*, No. 08 C 7322, 2010 WL 2136665, at *10 (N.D. Ill. May 26, 2010) (defendant violated Rule 26(e) by not timely supplementing its disclosures to add witness who had previously been disclosed by former co-defendant).

"Failure to comply with Rule 26(a)(2)'s requirements results in sanction: the offending party is not allowed to introduce the expert witness's testimony as 'evidence on a motion, at a hearing, or at a trial.'" *Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 641 (7th Cir. 2008) (quoting Fed. R. Civ. P. 37(c)(1)). "This sanction is automatic and mandatory unless the offending party can establish that its violation of Rule 26(a)(2) was either justified or harmless." *Id.* (internal quotation marks omitted); Fed. R. Civ. P. 37(c)(1).

Here, neither the Individual Defendants nor American Litho assert that the Individual Defendants' violation of Rule 26(a)(2) was justified or harmless. So, again, their opposition on this issue is waived. That said, it seems the Individual Defendants may have a good argument that their violation was harmless given that Scott was disclosed by American Litho, *see* Fed. R. Civ. P. 37, 1993 advisory committee notes (observing that Rule 37(c)(1)'s exceptions for substantially justified and harmless violations can apply to "the failure to list as a trial witness a person so listed by another party"), but again this issue has not been briefed (because it was not raised) so the court cannot reach any firm conclusion. Nevertheless, because defendants did not argue that the Individual Defendants' violation was harmless or justified, the court will not make that argument for them.

The only question then is the remedy. Typically, exclusion of the expert witness for all purposes, including both summary judgment and trial, is the proper sanction. *Ciomber*, 527 F.3d at 641. Here, however, that is complicated by the fact that American Litho disclosed Scott and therefore may rely on him (to the extent his opinions are admissible). Allowing Scott to testify at trial but simply preventing the Individual Defendants from examining him is a strange circumstance, and, given the paucity of briefing, no party has addressed exactly how this would play out at trial and what complications or problems such a remedy might create. Accordingly, at present the court only disregarded the Individual Defendants' use of Scott's report and his testimony for purposes of their summary judgment motion, *see* [711], and reserves ruling on whether and how they may use Scott's testimony at trial. *See Smith*, 2008 WL 8700457, at *11 (striking affidavit at summary judgment stage). The parties may raise this issue in their pretrial filings.

## CONCLUSION

Segerdahl's motion, [588], is granted in part and denied in part. Scott may testify as to all matters in his report save for his opinion that R.J. Reynolds owned

the "artwork, templates, and forms." The parties may brief any proposed remedy for the Rule 26 violation discussed in Part III, *supra*, in their pretrial filings.

Dated:  February 22, 2023 /s/ Martha M. Pacold